UNITED STATES of America,

v.

LOFT ON 6TH FLOOR OF BUILDING AT 40 E. 12TH STREET, NEW YORK, N. Y.

In the matter of Application of Quashing of a Subpoena Dated November 27, 1959, to KAYSEY SALES COMPANY, Inc.

United States District Court
S. D. New York.

March 29, 1960.

Herbert Monte Levy, New York City, for Kaysey Sales Co., Inc.

Otis Pratt Pearsall, Asst. U. S. Atty., New York City, for United States.

MURPHY, District Judge.

█ Petitioner moves (1) to suppress and to require the return of certain materials alleged to be obscene which were seized under a federal search warrant on the 25th of November, 1959, as well as a dozen or so allegedly obscene photos "given" to a postal inspector by the New York City police the preceding day "after" a search and seizure by the police in petitioner's warehouse, and (2) to quash a dishonored grand jury subpoena directed to it and returnable at a date prior to the time of this motion. Petitioner also complains of an alleged unlawful search and seizure in Ohio by a federal agent on October 8, 1959, but with respect to which, in the absence of a proprietary or possessory interest, we hold that it has no standing to make such complaint. Connolly v. Medalie, 2 Cir., 1932, 58 F.2d 629. Cf. Jones v. United States, 80 S.Ct. 725.

██ The search and seizure on November 24th occurred in a New York City warehouse by the New York City police without a warrant and was stipulated to have been illegal. While that illegality would not preclude the admissibility of seized evidence in a New York State prosecution, People v. Variano, 5 N.Y.2d 391, 185 N.Y.S.2d 1, 157 N.E.2d 857, its admissibility in this court depends upon the question of federal participation therein. Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819; Kendall v. United States, 5 Cir., 1959, 272 F.2d 163; United States v. Camara, 7 Cir., 1959, 271 F.2d 787; Rios v. United States, 9 Cir., 1958, 256 F.2d 173, certiorari granted, 359 U.S. 965, 79 S.Ct. 881, 3 L.Ed.2d 833. Contra, Hanna v. United States, 1958, 104 U.S.App.D.C. 205, 260 F.2d 723. In addition, the federal search warrant issued the next day, if an outgrowth of federal participation in an illegal search, could not withstand this motion to suppress. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319.

█ A hearing was held on this question and from all the testimony adduced and the exhibits we conclude that the federal authorities did not request the search of the 24th; were not the moving force of such search and that the search was not undertaken by the police to help enforcement of federal law. We further find that there was no federal participation at all in that search within the meaning of Lustig, and that the motion to suppress based upon federal participation must be denied.

Participation in the rationale of Lustig is either if the federal agents were in it from the beginning or joined it before it had run its course, i. e., if they were in it before the object of the search was completely accomplished, they would be deemed to have participated in it. The court in Lustig held that search is a functional process as well as physical, and is not completed until there is made an effective appropriation, as part of an uninterrupted transaction, of illicitly obtained objects for subsequent proof of an offense. Under the facts here presented it is clear that the police had concluded their search and effectively appropriated a comprehensive sampling of the entire contents of the warehouse long before the postal inspector arrived, and that he took no part therein. The twelve or so pictures which the government retains from this occasion we feel are within the "silver platter" doctrine and need not be returned or suppressed. Lustig v. United States, supra, 338 U.S. at page 79, 69 S. Ct. at page 1374.

█ As to the motion to quash the grand jury subpoena, it is denied. That subpoena required production of the corporation's books and records, and was not addressed to any of the "obscene" material seized on the 24th or 25th of November. Any further discussion is academic in view of the sound argument

of the government that the motion to quash a dishonored and spent subpoena is now moot.

■ The motion to suppress as evidence the materials seized on the 25th by virtue of the federal search warrant must however be granted because of the invalidity of the warrant. Rule 41(b), Fed.R.Crim.P., 18 U.S.C.A., provides, inter alia, that "A warrant may be issued under this rule to search for and seize any property * * * (2) Designed or intended for use or which is or has been used as the *means* of committing a criminal offense * * *." [Emphasis added]. Of course it must be a federal offense that is involved. Cf. Conyer v. United States, 6 Cir., 1935, 80 F.2d 292.

The affidavit supporting the application for a search warrant must establish the grounds for its issuance. Rule 41(c), Fed.R.Crim.P. The grounds set forth in the affidavit of Post Office Inspector Hessert to support the application for the warrant in issue are as follows: "That he has reason to believe that on the premises known as a loft on the 6th floor of the building at 40 East 12th Street, New York, New York, in the Southern District of New York, there is now being concealed certain property, namely, pictures, photographs and negatives of nude and semi-nude women, books and booklets which are *intended for use in a conspiracy to carry in interstate commerce* obscene, lewd, lascivious and filthy pictures, books and booklets and *to mail* written or printed letters, circulars and notices giving information where, how and from whom obscene articles, matters and things may be obtained, in violation of 18 U.S.C. [§§] 2, 1461 and 1462." [Emphasis added].

Inspector Hessert then sets forth, on information and belief, the facts which tend to establish his belief of the existence of the alleged conspiracy. These facts include a letter dated September 14, 1959, annexed to the affidavit, which purports to be from the president of petitioner to an Ohio company offering for sale and inviting orders of certain books, magazines and photo albums. On the letter was a handwritten notation to the effect that an order was placed by the recipient on September 16, 1959. This letter, the affiant believes, was mailed by Kaysey's president, and that in response, the Ohio addressee placed an order for booklets and photo sets of nudes (copies annexed to the affidavit) which, based on information he obtained from a shipping clerk of the Ohio firm, were thereafter delivered in interstate commerce by common carrier. The inspector also set forth on personal knowledge that there was stored on the premises to be searched booklets and pictures of nude women (samples annexed) and "Railway Express Receipts," (no copies of which were annexed thereto, nor to the government's papers on this motion). He further stated that Kaysey's president told him at the time, that it was Kaysey's warehouse and the materials were the property of Kaysey.

Conceding the truth of the allegations of the application and affidavit in support we conclude nevertheless that no proper grounds for the issuance of the search warrant were set forth within the meaning of Rule 41(b) (2). The material sought to be seized under the warrant here was not the *means* of committing the crime of conspiracy to violate Title 18 U.S.C. §§ 1461 and 1462 in any sense in which the term is properly used. Apart from the "obscene" material's introduction into interstate commerce via an express company or other common carrier, it is not contraband, nor violative of any federal statute to possess or transport it in commerce in any other manner (except, of course, by mail).

■ The crime of conspiracy to violate those sections of the Federal Criminal Code can be and, according to the theory of the inspector's affidavit, was committed quite apart from these materials sought to be seized under the warrant. There is here no contention that the materials lying at rest in the warehouse of Kaysey were transported in the prescribed manner, in commerce, so as to constitute the overt act relied upon to

complete the conspiracy as a crime, and thus becoming property used as the means of committing a crime. Cf. Atlanta Enterprise, Inc. v. Crawford, D.C. N.D.Ga.1927, 22 F.2d 834, 836. The affidavit stated that the property was intended for use *in* a conspiracy to commit the crimes charged. That is very different from use *as* the means of committing the crime. The difference changes the character of the property for which the warrant is sought, from that properly the subject of a warrant, to merely evidentiary material, and a search for evidence as such, violates the Fourth Amendment of the Constitution. Gouled v. United States, 255 U.S. 298, 309–311, 41 S.Ct. 261, 65 L.Ed. 647; In re No. 191 Front Street, 2 Cir., 1924, 5 F.2d 282, 285; 4 Barron & Holtzoff, § 2403, p. 357 (1951).

Furthermore, the obscene materials cannot be said to be the means or instrumentality of depositing itself for interstate shipment with any carrier. Cf. Rose v. St. Clair, D.C.D.Va.1928, 28 F.2d 189, 191. Much less can it be contended that the pictures and books, etc., were the means or instruments of committing the act or crime of mailing literature giving information where, how and from whom obscene matter may be obtained.

Webster's New International Dictionary, 2d ed., 1959, defines "means" as follows: "That through which, or by the help of which, an end is attained; something tending to an object desired; intermediate agency or measure; necessary condition or coagent; instrument." See also 57 C.J.S. pp. 475, 476. Shipping obscene books, photos, etc., in commerce by express company or other common carrier constitutes the crime proscribed, and cannot be said to be the "means" of committing the offense.

The result is no different when the allegation is, "intended" for use as the means of committing the crime. If in the actual commission of the crime it cannot be deemed the means thereof, its significance does not change when the crime is merely contemplated or in futuro.

Although we have assumed the truth of the statements of the affidavit with regard to the affiant's belief of the existence of a conspiracy, we are nevertheless of the opinion that from the facts set forth and the exhibits attached, there was no probable cause to so conclude.

The "letter" from Kaysey to the Ohio company was no more than a solicitation of business, not an invitation to partake in a criminal conspiracy condemned by federal statute. The letter offered, we will assume, smut for sale. The placing of an order pursuant thereto by the Ohio company was not an agreement by itself to violate federal laws. That company was interested in buying the smut, but by no implied or expressed manner did it appear that it did so on the understanding that delivery was to be in the manner that was prohibited by federal law. Even assuming that the delivery of that order was by common carrier as the clerk opined, while its acceptance by the Ohio company would constitute an offense proscribed by Title 18 U.S.C.A. § 1462, there is no logical inference that such acceptance amounts to an agreement to accept other such deliveries, i. e., consent to the manner of delivery and thereby perhaps an implied agreement, or conspiracy, to violate the statute in question. No other party or purchaser was referred to in the affidavit to whom sales were contemplated, or from whom purchases were solicited, and so if there is to be found a conspiracy at all it must needs be between Kaysey and the Ohio company and since we have demonstrated the defect in that position, no probable cause was shown for the existence of any conspiracy.

Settle order.