**UNITED STATES of America,**
v.
**Irving KLAW and Jack Kramer, Defendants.**
**63 Cr. 580.**

United States District Court
S. D. New York.
Feb. 13, 1964.

4. ORS 12.080 and 12.110.

Robert M. Morgenthau, U. S. Atty., for the Southern Dist. of New York, for United States of America, Richard A. Givens, Asst. U. S. Atty., and Jay Gold, New York City, of counsel.

Joseph E. Brill, New York City, for defendants, Robert E. Goldman, New York City, of counsel.

WYATT, District Judge.

After careful study, I have concluded that the motion of defendants to suppress evidence (Fed.R.Crim.P. 41(e)) must be denied.

On June 27, 1963, an indictment of the two defendants was returned. There are 85 counts, the first charging both defendants with conspiracy to violate 18 U.S.C. § 1461—mailing obscene, etc. matter. The other counts charge Klaw alone with the substantive offense of mailing obscene, etc. matter in violation of 18 U.S. C. § 1461. Pleas of not guilty have been entered.

After return of the indictment, warrants were immediately issued for the arrest of defendants.

That same afternoon (June 27) the warrant for Kramer was delivered to Postal Inspector Quinn who went with another inspector to business premises at 35 Montgomery Street in Jersey City where they found defendant Kramer. They identified themselves, told Kramer they had the warrant, that a Marshal would be there shortly to execute the warrant, that he could meanwhile read the warrant, that he could contact a lawyer to arrange for bail, etc. In a few minutes Deputy Marshal Coppodonna arrived; Quinn gave the warrant to the Deputy Marshal, who showed his credentials, read the warrant to Kramer and arrested him. After Kramer had been arrested, Quinn asked him if samples of the printed material in the premises could be taken; Kramer said this was all right. Quinn then took a small number of photographs, pamphlets and advertising circulars. These were taken from near the place of arrest and from open, visible locations. No doors, closets, desks, or files were opened to secure the material.

Both by affidavit and by testimony in open court subject to cross-examination Quinn says that Kramer consented to the material being taken. No affidavit of Kramer denying such consent is submitted nor did Kramer testify. I am bound to find that consent to a taking of the material was given.

By inspection of the items taken in Jersey City, they appear to be the same type of items claimed in the indictment to be obscene, etc. and mailed in violation of the statute.

On the same June 27 afternoon, Deputy Marshals Caffrey and Watson, with Postal Inspectors Simon, Kresky and Mock went to the business premises at 212 East 14th Street in New York. Caffrey had the warrant. Klaw was in an office there at a desk. The officers were admitted; Caffrey went up to the desk, showed Klaw the warrant and arrested him. The office was of substantial size. There were racks and shelves with some pictures and other items on them and also a quantity of similar items on the floor. The postal inspectors and at least one of the marshals looked at the material in the area generally between the

door of entry and Klaw's desk, material visible from the place where Klaw was arrested. They took away a substantial quantity of this material. Choice of items was in most cases left with the postal inspectors. No doors, closets, desks, or files were opened to secure the material. It was open to hand. No consent of Klaw was asked or given. Klaw says in his affidavit that the search "consumed between 10 and 15 minutes and only covered a small portion of the entire premises".

My inspection of the material taken from 212 East 14th Street indicates that it consists solely of (1) photographs, booklets and the like of the type claimed in the indictment to be obscene, etc. (2) sales or offering circulars of the items claimed to be obscene, etc., and (3) production material such as lay-outs, original photos and the like used in producing the items described in (1) or to be used in producing such items. My inspection indicates that no personal papers of defendants are included in the material, nor any business papers except to the extent that the items described may be considered business papers.

In determining whether the search here was proper, an attempt must be made to apply the presently valid pronouncements of the Supreme Court, which have been said to be "the product of an unusually tortuous development". Kaplan, Search and Seizure: A No-Man's Land in the Criminal Law, 49 Calif.L.R. 474 (1961).

The starting point must be United States v. Rabinowitz, 339 U.S. 56, 70 S. Ct. 430, 94 L.Ed. 653 (1950) where the court rejected as a test the "practicability" of procuring a search warrant. The court said (339 U.S. at 66, 70 S.Ct. at 435, 94 L.Ed. at 653):

"To the extent that Trupiano v. United States, 334 U.S. 699, 68 S. Ct. 1229, 92 L.Ed. 1663, requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled. The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable."

There was a valid warrant of arrest in Rabinowitz but no indictment and no search warrant. A search was nevertheless upheld as reasonable which was made incident to the arrest of "desk, safe and file cabinets, all within plain sight of the parties, and all located under respondent's immediate control in his one-room office open to the public". (339 U.S. at 61, 70 S.Ct. at 433, 94 L.Ed. 653).

Rabinowitz seems to be still good law. Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Ker v. California, 374 U.S. 23, 41, 42, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

In the case at bar, it seems clear that a search warrant could have been obtained. Fed.R.Crim.P. 41. It was apparent under the circumstances that the articles seized were probably to be found at 35 Montgomery Street in Jersey City and at 212 East 14th Street in New York City. Whatever the reason for failure to obtain a search warrant, it could not have been to avoid establishing probable cause to believe that the objects to be seized were at the place of arrest. Cf. Kaplan, citation above, at 493.

Except as to one point, everything about the searches here meets the tests in Rabinowitz. They were incident to valid arrests, they were on business—as opposed to home—premises, there was only one room in each instance, and the search did not extend beyond this one room (in fact, did not extend beyond the area of the room in plain sight from the place of arrest).

The one point wherein the case here differs from Rabinowitz is that possession of the items seized is not in and of itself a crime under federal law—the items are not contraband under federal law. I accept the arguments for defendants in this respect.

■■ It remains true, however, that a search for "the instrumentalities and means by which a crime is committed"

is reasonable. This is one of the categories so recognized in Harris v. United States, 331 U.S. 145, 154, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947) and it was in this category that the papers fell which were the subject of Abel v. United States, above; see especially the same case, 258 F.2d 485, 496–497 (2d Cir. 1958).

"[I]t is not *necessary* that mere possession of property be criminal in order to support its seizure pursuant to a lawful arrest". United States v. Lord, 184 F.Supp. 923, 926 (S.D.N.Y.1960; Irving R. Kaufman, J.) (emphasis in original).

It has been said that because of the "broad scope of the search" in Rabinowitz, the decision has been read "as authorizing general exploratory searches". Leagre, The Fourth Amendment and the Law of Arrest, 54 Journal of Criminal Law, Criminology, and Police Science 393, 402 (1963).

I will assume—as the defendants would wish me to do—that a "general exploratory search" would be unreasonable, as would a search for "merely evidentiary materials" (Harris v. United States, above, 331 U.S. at 154, 67 S.Ct. at 1103, 91 L.Ed. 1399).

Decision of the present motion turns, therefore, on whether the items in question are "instrumentalities and means" etc. or are "merely evidentiary materials". It is not easy to draw the line between these two categories but the courts appear to be liberal in deciding— where the search is otherwise proper— that papers are "instrumentalities and means".

A situation very close to that at bar was in Townsend v. United States, 271 F.2d 445 (4th Cir. 1959), cert. denied, 362 U.S. 921, 80 S.Ct. 675, 4 L.Ed.2d 741 (1960). Postal inspectors with a federal bench warrant after an indictment for "conspiracy to mail obscene matter" got the help of a city police officer to make the arrest (a marshal could not be found). The police officer obtained a state search warrant. The arrest was made and the postal inspectors with the police officer at the same time "made a search of the first and second floors and found a great amount of obscene writings and pictures". Defendant contended the state search warrant was invalid. On this assumption, the search was neverless upheld under Rabinowitz because the material seized "was identical with the subject matter of the very crime charged in the arrest warrant as well as * * *." (271 F.2d at 446). This decision seems squarely in point here.

The opinion by Judge Learned Hand in United States v. Poller, 43 F.2d 911 (2d Cir. 1930) seems liberal in upholding the search as to papers which "bore upon the importation of case, 'L.A.B. #2'" (43 F.2d at 913).

In the Lord case, above, the crime charged was impersonating an immigration officer in violation of 18 U.S.C. § 912. A valid warrant was issued by a commissioner for the arrest of defendant. FBI Agents arrested defendant under that warrant in her apartment and at the same time, but without a search warrant, took a number of documents, including "passport and visa applications, a passport in another's name, various Immigration and Naturalization Department forms, name cards and affidavits, etc." (184 F.Supp. at 926). In denying a motion to suppress this material, Judge Kaufman said (184 F.Supp. at 926):

"Thus, the only question remaining is whether the material seized was the 'means' by which the alleged crime was committed. The alleged crime was impersonation of an Immigration Officer. The material seized consisted for the most part of documents which could clearly be used to carry forward such an impersonation, e. g., passport and visa applications, a passport in another's name, various Immigration and Naturalization Department forms, name cards and affidavits, etc. In regard to these documents, it is abundantly clear that the seizure was proper. It is the government's position that this material was used as a 'means' to carry forward the unlawful imper-

sonation and the collection of money from Cuban aliens. It is not necessary that the government prove for purposes of this motion that the material was actually so used. That question will ultimately have to be decided by the jury at the trial."

In this connection and as a matter of historical interest, it should be noted that at one time there was a specific provision authorizing the issuance of a search warrant for obscene articles. 28 Stat. 549. This was later superseded by the general statutory provision (40 Stat. 228), the forerunner of present Fed.R. Crim.P. 41.

Defendants argue strongly that the search is only permitted in this category for the "means and instrumentalities" of an already completed crime and that the material here could not properly be looked for because its mere possession— unlike that in Rabinowitz—is not illegal. But there are further factors present here.

In the first count of the indictment in the case at bar, the conspiracy charged is said to have been in the period from June 1, 1960 to June 27, 1963 (the return of the indictment). It is charged that as part of the conspiracy the two places, one in New York and one in Jersey City, would be used as offices, that the place in Jersey City would be used as a warehouse for storage of the obscene, etc. items, and that defendants sent through the mails papers which gave information where and how the obscene items could be obtained. Considering the nature of the seized material, the government may be able to show that it was either (1) the claimed obscene items kept on hand to answer the advertisements and circulars said in paragraph 3 of the indictment to have been sent out by defendants, or (2) material used by defendants to produce the obscene items already mailed out by defendants (or by defendant Klaw alone), or (3) similar material used to produce the items being held to answer the advertisements, etc. referred to in (1). The "instrumentalities and means" test appears to have been met.

In Toscano v. Olesen, 184 F.Supp. 296 (S.D.Calif.1960) there was an indictment in Texas for violation of 18 U.S.C. § 1461. A warrant of arrest was given to a marshal in California who executed that warrant and without a search warrant and "with the aid of the postal inspectors" seized various property, including a typewriter, customer lists, motion picture films, etc. The court in California, without prejudice to a motion to suppress in Texas, declared as follows (184 F.Supp. at 297):

" * * * I am of the view that the search and seizure were proper, as incidental to a lawful arrest. The matters seized, except those that have been returned or agreed to be returned, related to the instrumentalities of the offense,—the *knowing* use of mail for transmission of obscene and unmailable matter." (emphasis in original)

Under the cases cited, I feel constrained to deny the motion.

Mention should be made, however, of the decision in this District of Judge Murphy in United States v. Loft, etc., 182 F.Supp. 322 (S.D.N.Y.1960), a decision which has been called "an example of the application of the means and instrumentalities rule at its worst" (Kaplan, citation above, at 478). Judge Murphy dealt with the validity of a search warrant under which alleged obscene items were seized. There had been no indictment and Judge Murphy decided a motion to suppress solely on whether the items fell within the category "[d]esigned or intended for use or which is or has been used as the means of committing a criminal offense". Fed.R.Crim.P. 41 (b). Judge Murphy decided that they did not and granted the motion, giving his reasons. The absence of any indictment as well as other factors distinguish that case from this but if the two cases are the same I feel obliged, with the greatest deference, to follow what seems the weight of authority rather than to follow Judge Murphy.

Nothing herein contained is meant to express an opinion that the material here

in question is in fact obscene, etc. within the meaning of 18 U.S.C. § 1461. It is of a type similar to that specified in the indictment and which may be found by the jury to be obscene, etc. within the meaning of the statute.

The motion to suppress is, for the reasons given above, denied.

So ordered.