**UNITED STATES of America,**
**Appellee,**

v.

**Edward A. WILD, Jr. and Louis Corrado,**
**Appellants.**

**Nos. 76–79, Dockets 32510–32513.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 11, 1969.

Decided Oct. 29, 1969.

Rehearing Denied Feb. 2, 1970.

William J. Gilbreth, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, Roger J. Hawke and Douglas S. Liebhafsky, Asst. U. S. Attys., on the brief), for appellee.

Herbert Monte Levy, New York City (Hofheimer, Gartlir, Hofheimer, Gottlieb & Gross, New York City, on the brief), for appellants.

Before LUMBARD, Chief Judge, and SMITH and FEINBERG, Circuit Judges.

LUMBARD, Chief Judge:

Edward A. Wild, Jr., and Louis Corrado appeal from their convictions by a jury in the Southern District of New York of violating the Comstock Act. 18 U.S.C. § 1461. They were found guilty of conspiracy to use the mails for conveyance and delivery of obscene color slides and photographs and of numerous mailings of obscene color slides and information regarding how to obtain them. Wild was sentenced to two years imprisonment; the execution of a similar sentence upon Corrado was suspended, and he was placed on probation for two years.

The appeals raise two questions: whether the slides are in fact obscene and whether the searches and seizures conducted by postal inspectors and deputy marshals were proper. As we find that the slides and photographs are obscene and that the material which was introduced in evidence against the appel-lants was properly seized, we affirm the convictions.

The question of obscenity can be disposed of merely by stating that these slides are unquestionably hard core pornography. The color slides which prompted prosecution were of two general types. The first group presented a nude male, seated or lying facing the camera, holding or touching his erect penis. The second group of slides depicts two nude males in the act of fellatio.

There is no conceivable claim that these color slides have redeeming social value, and none was made. With regard to the other two elements which the Supreme Court has specified must be present for a finding of obscenity—appeal to the prurient interest of the group likely to receive the allegedly obscene material and patent offensiveness under contemporary community standards—the appellants argue that the Government introduced no evidence other than presenting the slides themselves. More specifically, appellants contend that the slides were designed for a male homosexual audience and that the jury was unable to decide whether there was an appeal to the prurient interest of that group without expert testimony.

We do not believe, as appellants in effect urge, that the Constitution requires the Government to produce expert testimony about appeal to the prurient interest and contemporary community standards in every obscenity case. *Compare* Frankfurter, J., concurring in Smith v. California, 361 U.S. 147, 164–167, 80 S.Ct. 215, 4 L.Ed.2d 205, *with* Harlan, J., concurring in part and dissenting in part, *Id.,* at 170–171, 80 S.Ct. 215. It is clear that such testimony can be necessary on certain facts such as those presented in United States v. Klaw, 350 F.2d 155 (2d Cir. 1965), heavily relied on by appellants. However, the present case presents no such peculiar problems of proof.[1]

---

1. *Klaw* involved allegedly obscene booklets containing stories, drawings, and photographs in the "bondage" genre, de-scribed to the Court as "sado-masochistic." 350 F.2d at 157. In describing the problems confronting a jury which had to

■ We hold that in cases such as this the trier of fact needs no expert advice. As noted above, there was no claim of redeeming social importance. Cf. United States v. A Motion Picture Entitled "I Am Curious-Yellow," 404 F.2d 196 (2d Cir. 1968). One group of slides graphically depicts a sexual act and the other group focuses attention on the erect genitalia of the nude male models. In this context, the issues of prurient appeal and offensiveness to contemporary community standards can be dealt with by a jury without expert help. As the Supreme Court has stated, "in the cases in which this Court has decided obscenity questions since *Roth*, [Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498] it has regarded the materials as sufficient in themselves for the determination of the question." Ginzburg v. United States, 383 U.S. 463, 465, 86 S.Ct. 942, 944, 16 L.Ed. 2d 31 (1966). Simply stated, hard core pornography such as this can and does speak for itself.[2]

In a remarkably similar case in which a conviction under section 1461 was unanimously affirmed, Judge Prettyman wrote:

Most of the difficulty which enshrouds the discussion of the law concerning obscenity and filth develops upon consideration of books and magazine articles. Here arise problems of scienter, the meaning and effect of the whole, the value of the work to proper

interests of the public, the contemporary community standards in similar matters, and other baffling problems under our precious right of free speech, discussd in the several opinions in Smith v. California. [361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205] But we have no such problem in the case at bar. These are stark, unretouched photographs—no text, no possible avoidance of *scienter*, no suggested proper purpose, no conceivable community standard which would permit the indiscriminate dissemination of the material, no alleviating artistic overtones. These exhibits reflect a morbid interest in the nude, beyond any customary limit of candor. They are 'utterly without redeeming social importance.' * * *

We think that photographs can be so obscene—it is conceivably possible that they be so obscene—that the fact is uncontrovertible. These photographs are such. United States v. Womack, 111 U.S.App.D.C. 8, 294 F.2d 204, 205–206 (footnote omitted), cert. denied 365 U.S. 859, 81 S.Ct. 826, 5 L.Ed.2d 822 (1961).

See also, Kahm v. United States, 300 F.2d 78 (5th Cir.), cert. denied 369 U.S. 859, 82 S.Ct. 949, 8 L.Ed.2d 18 (1962); United States v. Davis, 353 F.2d 614 (2d Cir. 1965), cert. denied 384 U.S. 953, 86 S.Ct. 1567, 16 L.Ed.2d 549 (1966). Cf. Manual Enterprises v. Day, 370 U.S. 478, 489–490 and n. 13, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962) (opinion of Harlan,

judge obscenity without any evidence other than the booklets themselves, the Court stated:

"* * * the jury had insufficient evidence even to 'recognize' that the material appealed to the prurient interest of the average person. It had absolutely no evidentiary basis from which to 'recognize' any appeal to the prurient interest of the deviate or the typical recipient—a class never really defined in the record." 350 F.2d at 168.
We think the class of recipients in the present case was clearly defined, and we believe that the slides—graphic as they are—provided sufficient basis for decid-

ing about appeal to the prurient interest of that group.

2. The phrase "hard core pornography" has been widely used. Justice Stewart remarked "I know it when I see it." Jacobellis v. Ohio, 378 U.S. 184, 197, 84 S. Ct. 1676, 1683, 12 L.Ed.2d 793 (1964) (concurring opinion). In discussing this comment, Professor Freund recently stated: "What I believe Justice Stewart to mean is the sort of thing that strikes you patently, the filthy picture, the stag movie, perhaps the string of obscene words without much in between." P. Freund, Political Libel and Obscenity, 42 F.R.D. 437, 503 (1966).

J.). Judge Bonsal's charge to the jury properly defined obscenity in light of the relevant Supreme Court cases; the jury was capable of applying those tests to this material.

 Finally, we note that appellants' own evaluation of the slides confirms the finding of appeal to the prurient interest. Mishkin v. New York, 383 U.S. 502, 508, 86 S.Ct. 958, 16 L.Ed. 2d 56 (1966); Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966). In considering the slides, the jury had before it brochures which the appellants had mailed out along with sample slides. These advertisements seem to us to constitute the type of pandering which is relevant to a determination of obscenity. Although appellants contend that Judge Bonsal's charge on the issue of pandering was improper, no such objection was made to this portion of the charge at trial and we need not consider it here. United States v. Re, 336 F.2d 306, 316 (2d Cir.), cert. denied, 379 U.S. 904, 85 S.Ct. 188, 13 L.Ed.2d 177 (1964). Fed.R.Crim.P. 30.

Appellants' other main contention is that the search and seizure of materials without a search warrant in an obscenity case violates their rights under the First, Fourth, and Fifth Amendments. Both appellants were arrested on December 1, 1965, in an apartment building on Pierrepont Street in Brooklyn where they resided. The arrests were made pursuant to bench warrants issued following the indictment, and appellants do not dispute the lawfulness of their arrests. As an incident to the concededly lawful arrests, postal inspectors and deputy marshals immediately conducted searches of both the Wild and Corrado apartments where the arrests took place. In addition, the officers interrupted their search of Corrado's apartment and went with Corrado to a third apartment—an "office" on Hicks Street in Brooklyn—and searched there. After completing the search at Hicks Street, Cor-

rado and the officers returned to the Corrado apartment and completed the search begun there earlier.

 A number of items were seized at each apartment: cameras, projectors, and other photographic equipment, film, slides, order forms, advertising brochures, customer records, envelopes, and rubber stamps bearing the names of mail order businesses operated by appellants.

On February 2, 1966, appellants filed a notice of motion to suppress and return the items seized. A suppression hearing was held on March 30 and 31, 1966, and the parties submitted affidavits and memoranda on the motion up until September 15, 1967. On that day, Judge Murphy denied the motion, holding that the search at Hicks Street was consented to by Corrado and that the searches at Pierrepont Street were valid as incident to lawful arrests. Judge Murphy stated that the validity of the searches "depends upon whose testimony is accepted and we have no hesitancy in saying that we accept the testimony of the deputy marshals and Post Office inspectors and reject that of Corrado and Wild."[3] The motion to suppress was apparently reasserted just prior to trial. Our review of the trial record indicates that none of the material seized at Hicks Street was introduced in evidence and the officers did not testify about that search; however, Government witnesses did testify about the searches at the Corrado and Wild Pierrepont Street apartments, and boxes of color slides, rubber stamps, customer orders and order forms—mostly from Corrado's apartment—were offered in evidence. Judge Bonsal received them in evidence, over defendant's objection, and we hold that his action was proper.

It has been held that items such as those received in evidence at appellants' trial may be seized incident to a lawful arrest in an obscenity case. United States v. Klaw, 227 F.Supp. 12 (S.D.

---

3. Memorandum Opinion and Order No. 34012 (September 15, 1967).

N.Y.1964), rev'd on other grounds, 350 F.2d 155 (2d Cir. 1965). In *Klaw*, Judge Wyatt relied primarily on United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), a case which has recently been overruled by the Supreme Court. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). However, we have recently held Chimel to be fully prospective in United States v. Bennett, 415 F.2d 1113, (2d Cir. September 9, 1969), and thus it has no application to the present case. We hold that the search incident to arrest was proper under *Rabinowitz*. See also, Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947).

There can be no dispute that the materials taken and used at trial were subject to seizure. Not only did they appear to be "instrumentalities and means" of the crime, see *Klaw, supra*, 227 F.Supp. at 15-17, but they were also "mere evidence," the seizure of which incident to arrest was held proper in Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L. Ed.2d 782 (1967).

■ The items not used in evidence at the trial have apparently been retained by the Government. Some of this material, such as the slides and brochures, may be retained as contraband. Trupiano v. United States, 334 U.S. 699, 710, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948). However, other items—particularly the photographic equipment that was seized —should have been returned by the Government at least when appellants' counsel on appeal made an oral demand upon the Assistant United States Attorney after the convictions were obtained. While we do not condone overlong detention of such items, we fail to see how this can affect the validity of appellants' convictions.

In conjunction with the specific claim that the items seized should have been suppressed, appellants present a broader argument that seizures in an obscenity case without a prior adversary hearing on the issue of obscenity are unconstitutional under Quantity of Books v.

Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), and Marcus v. Search Warrants, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961). These cases are inapposite since they involved massive seizures of books under state statutes which authorized warrants for the seizure of obscene materials as a first step in civil proceedings seeking their destruction. The seizures in this case were of instrumentalities and evidence of the crime for which appellants were indicted and lawfully arrested. We do not believe *Marcus* and *Quantity of Books* can be read to proscribe the application of the ordinary methods of initiating criminal prosecution to obscenity cases. See Milky Way Productions, Inc. v. Leary, New York Feed Co., Inc. v. Leary, 305 F.Supp. 288 (S.D. N.Y. October 15, 1969) (three-judge court).

Judgments of conviction affirmed.

### On Petition for Rehearing

**PER CURIAM:**

Appellants have petitioned for rehearing of our decision in United States v. Wild, 34 (2d Cir. Oct. 29, 1969), claiming that we have overlooked an intervening decision of another panel of this court, that we have incorrectly stated their legal position and that the arrests of appellants were unlawful.

The intervening decision referred to is Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2d Cir. 1969), decided after the date of argument in this case but some three weeks before our decision. *Bethview* grew out of a criminal prosecution for "Obscenity" under New York State Penal Law, McKinney's Consol. Laws, c. 40, § 235.05(1), (2). Armed with search and arrest warrants, police officers arrested plaintiffs in that case and seized a print of an allegedly obscene motion picture film. Plaintiffs brought suit in the United States District Court for the Eastern District of New York and obtained an order requiring the return of the film. We affirmed on the

ground that an adversary hearing on the issue of obscenity was necessary before the film could be seized by the police. Appellants claim that the decision in *Bethview* is "in irreconcilable conflict" with our decision here.

We do not agree with that conclusion. First, the *Bethview* court did not have before it an appeal from a conviction in which the seized film had been introduced into evidence; therefore, it did not hold that such a conviction would have to be reversed. While the panel there ordered the film returned, it did not say that the print could not be used by the prosecution in a trial on the outstanding criminal charge. In fact, the court in *Bethview* indicated precisely to the contrary, 416 F.2d at 412:

> The appellants contend that a print of the motion picture is needed for purposes of prosecution. There are a number of ways in which this can be accomplished without seizure of the film. The court can direct that a print be made reasonably available to the prosecution; a subpoena duces tecum can be used.

> Finally it is suggested that unless the police or other local authorities have actual possession of the film pending the required adversary proceeding, the distributor may take advantage of the delay, for example, by shipping the film out of the jurisdiction or by cutting out the offending scenes. If there is a real threat of such activity it can be controlled by an ex parte restraining order.

See Tyrone, Inc. v. Wilkinson, 410 F.2d 639, 641 (4th Cir. 1969), cert. denied 396 U.S. 985, 90 S.Ct. 478, 24 L.Ed.2d 449 (Dec. 15, 1969). In our case, the issue is whether a new trial must be ordered because some of the seized material was used as evidence.[1] We do not believe that *Bethview* decided that question in the affirmative.

Second, the *Bethview* panel analogized "a single print of a motion picture film" to seizure of "a large number of books" because in both instances, without any prior adversary hearing, a large group in the community is denied access to material that may be entitled to first amendment protection. Thus, the *Bethview* panel pointed out that a single motion picture print could be seen by over 4,000 people in one week. This is not true of other kinds of allegedly obscene material, e. g., a single copy of a magazine or of an underground newspaper, cf. Milky Way Productions, Inc. v. Leary, 305 F.Supp. 288 (S.D.N.Y.1969), or a single copy of a slide similar to those involved here. The *Bethview* panel did not hold that it is improper, after a lawful arrest, to seize as evidence a few samples of this kind of allegedly obscene material, each of which can, by its nature, be seen by only a few people. In other words, the *Bethview* panel, as did we, looked to the rationale of A Quantity of Books v. Kansas, 378 U.S. 205, 210–211, 213, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), and Marcus v. Search Warrants, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), which proscribed, as we pointed out, 38, "massive seizures of books under state statutes which authorized warrants for the seizure of obscene materials as a first step in civil proceedings seeking their destruction." As we stated in our opinion, *id.*, we do not believe that those cases "proscribe the application of the ordinary methods of initiating criminal prosecution to obscenity cases," e. g., by seizing as incident to a lawful arrest evidentiary samples of allegedly obscene material. Accordingly, we conclude that our decision and *Bethview* are not in conflict.

In their petition for rehearing, supplemented by a motion for leave to file a supplemental appendix, appellants argue that "thousands of slides" were seized here, thus making this case a

---

1. We note that only appellant Wild raises this point. Appellant Corrado "would prefer to have the conviction affirmed as to him rather than to undergo a new trial." Appellants' brief, p. 25.

"massive seizure" within the rationale of *Quantity of Books, Marcus,* and *Bethview.* However, the argument made to us on appeal was that "any seizure"[2]—small or massive—was unconstitutional if made without a prior hearing. As indicated, we reject that contention. As to whether the search and seizure here was so "massive" as to be prohibited by the first amendment, we simply are not furnished with adequate facts. The proffered supplemental appendix may indicate what was taken but does not show what was left, nor can we tell whether the seizure included all—or merely some—copies of a particular slide, how many separate slides were involved, or whether they "were on the threshold of dissemination." See Mishkin v. New York, 383 U.S. 502, 513, 86 S.Ct. 957, 16 L.Ed.2d 56 (1966). In short, we do not think it appropriate to decide the issue now raised of "massive seizure" and the constitutional implications thereof on a belated argument and inadequate record. Accordingly, we deny leave to file the supplemental appendix.

The remaining issues in the petition for rehearing require little discussion. We did state twice in our opinion that appellants did not claim that the color slides had redeeming social value. Appellants point out, however, that their brief did make the claim. Accordingly, we amend the opinion by adding the phrase "at trial" at the end of the sentences beginning at 35 and 36. Despite what appellants may claim, we adhere to our prior conclusion, implicit in our opinion, that the slides have no redeeming social value. Appellants' last point that their arrests were unlawful was dealt with in our opinion and is concededly brought to our attention again only "to protect" the record.

The petition for rehearing is denied. The motion to stay the mandate pending the filing of a petition for a writ of certiorari is granted, subject to the requirements of Fed.R.App.P. 41(b).