**POSTSCRIPT ENTERPRISES, INC.,
and Transcontinental Leasing
Corp., Plaintiffs,**

v.

**Hon. George F. WESTFALL, as Prosecuting Attorney of St. Louis County, Missouri, and Col. Gilbert Kleinknecht, as Commanding Officer of the St. Louis County Police Department, Defendants.**

No. 82–1628C(2).

United States District Court,
E.D. Missouri.

Oct. 9, 1984.

Murry A. Marks, St. Louis, Mo., for plaintiffs.

Thomas W. Wehrle, Robert H. Grant, Clayton, Mo., for defendants.

## MEMORANDUM

FILIPPINE, District Judge.

Plaintiffs bring this action for a declaration by the Court that Mo.Rev.Stats. §§ 542.281, 542.301, 573.010, 573.030, 573.-060, and 573.070 are unconstitutional under the First, Fifth, and Fourteenth Amendments to the United States Constitution. The Court adopts the following memorandum as its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52.

### I. *Facts*

This matter is presented to the Court on stipulated facts.

The plaintiff Postscript Enterprises, Inc. (hereinafter "Postscript") operates the Adult Book Store located at 3421 North Lindbergh Boulevard in the City of Bridgeton, Missouri. The Adult Book Store (hereinafter "the Store") is divided into two sections. The front section, which does not require a "membership," is described as follows: a glass-enclosed counter is located on the northeast side in the front area. Behind the glass counter is a small desk with a cash register. The clerk or store manager generally sits in this area. Inside the glass case is a display of vibrators, dildos and creams. Across from the clerk area and attached to the north wall are several photographs of nude men and women. On the east wall and the west wall of the front area are two magazine racks containing magazines. The west wall is a divider separating the front and rear areas of the Store. In the center of the divider is a door leading to the rear area wherein the adult movie section is located. The door contains a lock which is controlled by an electronic button. The door is operated by the clerk from behind the glass counter.

The rear section of the Adult Book Store contains fifteen booths, each booth containing a movie machine. As one enters through the door to the rear area, there is a small partition which contains a listing of each movie and in which booth the movie is located. The list gives the booth number, a small description of the movie, and the type of movie, i.e., Number 1, two white males and one white female straight. Behind the small partition is a large open area. The booths are located on both the north and south walls. On the north wall are booths numbers 1 through 8, and on the south wall are booths numbers 9 through 15. The

rear area of the store is very dim and poorly lit. The rear area of the store is marked as being "not open to the general public." Neither minors nor non-members are permitted by plaintiff to enter the rear portion of the Adult Book Store. To become a member entitling an adult to gain access to the rear area of the store, the adult must purchase a membership. A membership is purchased in the front of the store at a cost of one dollar ($1.00) for a period of one year and the individual must show some identification and sign a statement which states that he is not a police officer. The store clerk then issues a membership card to the individual which entitles him to access to the rear area of the store. In order for an individual to view any movie in one of the fifteen booths, he must deposit one quarter into a coin slot. After the coin is deposited, a segment of the movie can be viewed. To see an entire movie, approximately eight quarters ($2.00) are required. For each twenty-five cents, a segment of film is shown varying in length of time from approximately one minute and twenty seconds to one minute and forty seconds. The films involved herein are all silent films (no sound track) and do not show titles or credits. All of the projectors involved herein contain a metal plate bearing a serial number and the words "Property of Transcontinental Leasing Corporation."

On December 8, 1981, Detective Denver Belmear of the St. Louis County Police Department, entered the store and reviewed each film located in the rear area of the store. On December 9, 1981, he filed an application for a search warrant and an affidavit describing each of the films. After an adversary hearing pursuant to Mo. Rev.Stat. § 542.281.5 and an unsuccessful attempt on the part of Postscript to secure a writ of prohibition, on January 22, 1982, Judge George Gerhard of the St. Louis County Circuit Court signed a search warrant authorizing the search and seizure of the films as well as the projectors by which the films were being displayed and which were located on the premises of the Store. Detective Belmear proceeded to the Store,

served the search warrant on Randall Pallarito, manager of the Store, and seized the films and projectors. On April 16, 1982, plaintiffs' motion filed February 24, 1982, in the St. Louis County Circuit Court to quash the search warrant previously issued by Judge Gerhard and for return of the films and projectors was denied.

On September 21, 1982, Detective Charles Scherer of the Bridgeton Police Department purchased a membership to gain access to the rear area of the store. Detective Scherer viewed each of the movies in the fifteen booths. On September 22, 1982, Detective Scherer and Detective Tom Vohsen, also of the Bridgeton Police Department, executed and filed affidavits in the St. Louis County Circuit Court. Along with the affidavits, the St. Louis County Prosecuting Attorney's Office filed an application to search the Store and seize the films and projectors described in the affidavits. On September 24, 1982, an adversary hearing was held in the St. Louis County Circuit Court before Judge John F. Kintz. At the conclusion of the hearing Judge Kintz signed a search warrant authorizing a search of the premises and the seizure of the films and one projector and booth. On September 27, 1982, after service of the search warrant on Joseph Demetria DeAndrea, Jr. at the store, Detective Scherer and one Lieutenant Steinman seized the items described in the warrant. On October 22, 1982, the St. Louis County grand jury indicted Mr. DeAndrea on the charge of promoting pornography in the second degree.

On September 30, 1982, Detective John Schupp of the St. Louis County Police Department entered the Store, purchased a membership to the rear portion of the Store and viewed each of the movies in the booths. On October 1, 1982, Detective Schupp filed an affidavit and application for a search warrant in the St. Louis County Circuit Court. After an adversary hearing on October 5, 1982, Judge Kintz signed a search warrant authorizing the seizure of the films viewed by Detective Schupp, fourteen super eight movie projectors on which

the films were displayed and fourteen projection booths in which the films and projectors were located. Detective Schupp and Lieutenant Steinman executed the warrant on October 7, 1982. On October 7, 1982, the motion of plaintiffs filed on October 6, 1982, to quash the search warrant and for return of the projectors and booths was denied.

Following the execution of this third search warrant on October 8, 1982, plaintiffs filed suit against George R. Westfall, Prosecuting Attorney of St. Louis County, and Colonel Gilbert Kleinknecht, Superintendent of the St. Louis County Police Department, in this Court. Plaintiffs' third amended complaint is premised on 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201. Plaintiffs allege that defendants' confiscation of movie projectors and viewing booths, owned by plaintiff Transcontinental Leasing Corp. and leased by plaintiff Postscript, pursuant to Mo.Rev.Stat. §§ 542.281 and 573.010 deprived them of their constitutional rights. In their prayer for relief, plaintiffs seek a declaration that these and other Missouri statutes, Mo.Rev.Stat. §§ 542.301, 573.010, 573.030, and 573.070, are unconstitutional on their face or as applied to them, an order requiring defendants to return all of the property of plaintiff Transcontinental which was seized and attorney's fees and costs.

It is apparent from the parties' pre-trial briefs that after this action was filed, defendants returned all seized movie projectors and booths to defendant except for one projector which plaintiffs apparently agreed to permit defendants to retain. According to the affidavit of Murry A. Marks, Attorney for plaintiffs, at the time the property was returned, Mr. Marks was advised by the office of the Prosecuting Attorney that destruction of the machines would ultimately be sought and that the machines should not be removed from the state of Missouri. Thus, as is confirmed in plaintiffs' proposed conclusions of law, plaintiffs no longer seek injunctive relief. All that remains is plaintiff's request for declaratory judgment and the matter of attorney's fees and costs.

## II. *Jurisdiction*

The fact that the machines have been returned to plaintiffs and that plaintiffs, therefore, no longer seek return of any property seized raises the question of whether this Court presently has jurisdiction to decide this case. Article III, Section 2, of the United States Constitution permits a federal court to act only in cases and controversies. The Declaratory Judgment Act, 28 U.S.C. § 2201, under which this suit is brought, provides:

> In a case of *actual controversy* within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

(Emphasis added.)

At the time this suit was filed there unquestionably existed a case or controversy between the parties. However, it is settled law that in order for the Court to have jurisdiction to decide a matter, an actual controversy must exist at the time of the decision. *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969); 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2757 p. 602–614 and cases cited therein. Further, for the Court to enter a declaratory judgment there must exist a "substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Golden*, 394 U.S. at 108, 89 S.Ct. at 959 quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). In *Laird v. Tatum*, 408 U.S. 1, 14, 92 S.Ct. 2318, 2326, 33 L.Ed.2d 154 (1972) the Court proposed that the test of justiciability in this context is whether there exists "a claim of specific present objective harm or a threat of specific future harm...." With regard to their challenges to the seizure and ultimate forfei-

ture of the booths and projections plaintiffs have met this test. When the property was returned to plaintiffs they were advised that the property should not be removed from the state of Missouri as defendants intended to ultimately seek their destruction. Affidavit of Murry A. Marks. This is clearly a threat of specific future harm and is sufficient to satisfy the requirements of both Article III, Section 2, of the United States Constitution and the Declaratory Judgment Act, 28 U.S.C. § 2201.

█ However, with regard to plaintiffs' prayer for declaratory judgment of the constitutionality of Mo.Rev.Stats. §§ 573.010, 573.030, 573.060, and 573.070 there is no actual case or controversy. These statutes define the crimes of promoting pornography in the second degree and public display of explicit sexual material and the procedures for obtaining declaratory judgments and injunctions against them.

According to the stipulated facts before the Court, plaintiffs are not charged with either of these crimes, nor is there any indication that plaintiffs have been charged with, or convicted of, these crimes in the past. Further, nothing indicates to the Court that there are any specific threats of future prosecution under the statute. *Laird, supra.* Accordingly, the Court is without jurisdiction under Article III, Section 2, of the United States Constitution to address the constitutionality of Mo.Rev. Stats. §§ 573.010, 573.030, 573.060, and 573.070.

### III. *Mo.Rev.Stat. §§ 542.281 and 542.301*

#### A.

Plaintiffs first ask this Court to hold that the projectors and booths seized from the store do not come within the ambit of Mo. Rev.Stat. §§ 542.281 and 542.301. They rely exclusively on the memorandum opinion of Judge Michael F. Godfrey of the Circuit Court of the City of St. Louis in *In re: Search Warrants for 3552 Gravois,*

No. 782–654 (May 23, 1978) in which the court held that mini-movie machines by which obscene films were displayed "do not come with [sic] the purview of the forfeiture statute." *In re: Search Warrants* at 13. There are no reported decisions addressing this issue.

█ Mo.Rev.Stat. § 542.281.1(2) authorizes the seizure of "[p]roperty which has been used by the owner, or used with his consent, as a raw material or as an instrument to publish or produce such obscene matter." The seizure of the booths and projectors is clearly within the ambit of the seizure statute.

█ Mo.Rev.Stat. § 542.301.2(1) authorizes the seizure of three types of property. First, it authorizes the seizure of "[w]eapons, tools, devices, and substances other than motor vehicles, aircraft, used by the owner or with the owner's consent as a means for committing felonies...." The projectors and booths may arguably be considered devices within the meaning of the statute. There is nothing in the facts to suggest, however, that they are being used as a means for committing felonies.[1] Second, it authorizes the seizure of "property, the possession of which is an offense under the laws of this state [Missouri]...." This category clearly does not include the projectors and booths. Finally, the statute authorizes the forfeiture of property used "as a raw material or as an instrument to manufacture or produce anything the possession of which is an offense under the laws of [Missouri], or which any statute authorizes or directs to be seized...." The projectors and booths do not fit into this category either. There is no suggestion in the stipulations that the booths and projectors are being used to manufacture or produce anything. They are simply used to display the films. Thus, although the booths and projectors are clearly within the seizure statute, § 542.281, they are not

---

**1.** Of the pornography offense in Mo.Rev.Stats. Ch. 573, only promoting pornography in the first degree, § 573.020, is a felony. The stipulated facts do not suggest that plaintiffs are

using the projectors to engage in this crime as nothing indicates that they are wholesalers of pornographic materials.

**210**

subject to forfeiture under § 542.301. Accordingly, the Court finds it unnecessary to address the issue of the constitutionality of the forfeiture of the booths and projectors under § 542.301.

### B.

Plaintiffs attack Mo.Rev.Stat. § 542.281, the seizure statute, on two grounds. First they argue that seizure of the projectors and booths constitutes an unconstitutional prior restraint on their First Amendment rights since the projectors are ultimately subject to forfeiture under § 542.301. In determining that the projectors and booths are not subject to forfeiture under § 542.-301 the Court has disposed of this issue.

■ Second, plaintiffs argue that § 542.-281 is unconstitutional since it permits a taking of property without adequate due process safeguards. The seizure as evidence of non-obscene items related to the crime being investigated is a valid and accepted procedure in the investigation and prosecution of crimes. *See United States v. Wild*, 422 F.2d 34 (2d Cir.1969); *Star-Sattelite, Inc. v. Rosetti*, 317 F.Supp. 1339 (S.D.Miss.1970). Further, the seizure at issue here is under close judicial control. In order to seize the property one must obtain a warrant from a judge. If more than twenty items are sought to be seized, or the item to be seized is a motion picture film being exhibited to the public, an adversary hearing must be held prior to issuance of the warrant and decision must be rendered within ten days of the hearing. The safeguards provided render meritless any argument that they deny plaintiffs their due process rights.

### C.

Plaintiffs argue that the application of Mo.Rev.Stat. § 542.281.1(1) to plaintiffs is invalid because the material seized was not "being held or displayed for sale, exhibition, distribution or circulation to the public." Plaintiffs contend that the area of the Store in which the obscene material was held was open only to members of the private club and that the area was clearly so marked.

■ Plaintiffs here are asking the Court to declare whether or not they are within the meaning of the seizure statute. This matter is not properly before the Court as it is in the nature of a defense to prosecution under the statute. "[I]t is not the function of the federal declaratory action to anticipate a defense that otherwise could be presented in a state action." 10A Wright, Miller and Kane, *Federal Practice and Procedure* § 2758, at 631–32. *See id.* at n. 13 and cases cited therein. Accordingly, the Court will not address the issue of the applicability of Mo.Rev.Stat. § 542.-281 to plaintiffs herein.