**T.K.'S VIDEO, INC., Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–91–476–CR.**

Court of Appeals of Texas,
Fort Worth.

July 7, 1993.

Rehearing Overruled Sept. 15, 1993.

86

Malcolm Dade, Dallas, for appellant.

Bruce Isaacks, Dist. Atty., and Jim E. Crouch, Asst., Denton, for appellee.

Before HILL, C.J., and DAY and FARRAR, JJ.

## OPINION

DAY, Justice.

T.K.'s Video, Inc. (T.K.'s) appeals its conviction for promotion of obscenity. TEX.PE-NAL CODE ANN. § 43.23(c) (Vernon 1989). The jury assessed punishment at a fine of $10,000.

We affirm.

T.K.'s raises two points of error on appeal. First, T.K.'s complains the trial court committed fundamental error by charging the jury on the wrong standard of proof. By its second point, T.K.'s challenges the sufficiency of the evidence to sustain its conviction.

T.K.'s was charged by information with promoting obscene material, namely two magazines entitled *Too Hot To Stop* and *X–Rated Swingers # 32.* During the guilt/innocence phase of trial, the State put

on evidence that certain advertisements in these magazines were designed to appeal to a certain type of audience—"swingers"—rather than the average adult Texan. T.K.'s expert witness, Dr. Joseph Scott, also testified that the magazines in question were produced, manufactured, and marketed primarily for "swingers."[1] Based on this evidence, T.K.'s requested the following jury instructions:

### REQUESTED CHARGE NO. 3

. . . .

You are further instructed that the obscenity law includes a requirement that material be judged with reference to the "average" adult or "ordinary" adult. However, where it appears from the character of the "X–Rated Swingers Vol. # 32" itself or the evidence presented, if any, that it was designed for or directed to a particular audience, you must judge this material with reference to this particular audience.

In the circumstances of this case, therefore, you will judge obscenity with reference to ordinary adults, except that it shall be judged with reference to swingers if it appears from the character of the material designed for or directed to such susceptible audiences.

### REQUESTED CHARGE NO. 4

. . . .

You are further instructed that if the intended and probable recipients of the material in question, "X–Rated Swingers # 32" were members of a deviant sexual group, to wit: swingers. If you find that this was the case, then you are to determine whether the material appeals to the purient [sic] interest in terms of the average member of that deviant group, and not the average person in the community.

The trial court denied the requested instructions and instead instructed the jury

---

**1.** Scott's testimony indicates that a "swinger" is a person who engages in mate-swapping, wheth-er heterosexual, homosexual, or bisexual.

on "obscene" and "prurient interest" as those terms apply to the average adult.

T.K.'s argues that the refused instructions were necessary because materials aimed at sexually deviant groups cannot be judged by what appeals to the prurient interest of the average person. T.K.'s argument is grounded upon a misinterpretation of the contemporary community standards test for obscenity. *See Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419, 431 (1973);[2] *Andrews v. State*, 652 S.W.2d 370, 380 (Tex.Crim.App.1983).[3] Under both state and federal law, a jury is permitted to draw upon knowledge of the community and decide whether the *average* person, applying community standards, would find the materials in question obscene. *See Hamling v. United States*, 418 U.S. 87, 105, 94 S.Ct. 2887, 2901, 41 L.Ed.2d 590, 610 (1974); *Andrews*, 652 S.W.2d at 380.

T.K.'s mistakenly relies on *Mishkin v. New York*, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966) as support for its position. In that case, the appellant argued that materials depicting deviant sexual practices do not satisfy the prurient-appeal requirement because they "disgust and sicken" the average person instead of appealing to him. *Id.* at 508, 86 S.Ct. at 963, 16 L.Ed.2d at 62. The Supreme Court rejected this argument and stated, "[w]here

the material is designed for and primarily disseminated to a clearly defined deviant sexual group, rather than the public at large, the prurient-appeal requirement ... is satisfied if the dominant theme of the material taken as a whole appeals to the prurient interest in sex of the members of that group." *Id.*

We do not read *Mishkin* to require a special jury instruction whenever there is evidence that obscene materials may attract a sexually deviant group. Rather, *Mishkin* merely stands for the proposition that materials targeting deviant groups are not beyond the scope of the obscenity laws just because they appeal to the prurient interest of a sexual deviant rather than the average adult.

If we followed T.K.'s argument in a case involving the obscenity of materials portraying adults engaged in sexual intercourse with children, the trial court would be required to instruct the jury that prurient interest would be defined from the viewpoint of the average pedophile. *See United States v. Guglielmi*, 819 F.2d 451, 455 (4th Cir.1987) (trial court in bestiality case involving obscene films was not required to ask the jury to find whether there was such a thing as an average zoophile and the appeal of the films to such a per-

---

**2.** The federal test for obscenity is: (1) whether the average person, applying contemporary community standards, would find the work, taken as a whole, appeals to the prurient interest; (2) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (3) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. *Miller*, 413 U.S. at 24, 93 S.Ct. at 2615, 37 L.Ed.2d at 431.

**3.** The Texas test for obscenity is somewhat stricter than the federal test:
    (1) the average person, applying contemporary community standards, would find that taken as a whole the material alleged to be obscene appeals to prurient interest in sex; (2) the average person, applying current community standards of decency, would find that facially the material is so offensive that it is not decent; (3) the average person would find that facially the material depicts or describes represen-

tations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, which ultimate sexual acts include but are not limited to sexual intercourse, sodomy, and sexual bestiality, or the average person would find that facially the material depicts or describes representations or descriptions of masturbation, excretory functions, sadism, masochism, lewd exhibition of the genitals, the male or female genitals in a state of sexual stimulation or arousal, covered male genitals in a discernibly turgid state or a device designed and marketed as useful primarily for stimulation of the human genital organs; *and* (4) *regardless* of what may be socially acceptable to the average person or what the contemporary community standards of propriety may be to the average person in the community, the material, taken as a whole, must lack serious literary, artistic, political, and scientific value.

*Andrews*, 652 S.W.2d at 380 (emphasis in original).

son), *cert. denied,* 484 U.S. 1019, 108 S.Ct. 731, 98 L.Ed.2d 679 (1988).

Because we find the trial court properly instructed the jury on which standard of proof to apply, we overrule T.K.'s first point of error.

In its remaining point of error, T.K.'s contends the evidence is insufficient to support its conviction. Under this point, T.K.'s asserts the State failed to prove its case in chief because it did not put on any evidence about whether a "swinger" would find the magazines obscene. T.K.'s urges that since the magazines were prepared for and marketed to "swingers," the State had to present some evidence concerning how "swingers" would view them.

■■■ The two magazines themselves were introduced into evidence, and the jury could have made its obscenity determination based on that evidence, alone. *See Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 56, 93 S.Ct. 2628, 2634, 37 L.Ed.2d 446, 456 (1973) (the materials themselves are the best evidence of obscenity). Moreover, expert testimony is not required to prove materials are obscene if the materials themselves are introduced into evidence. *See id.; Goodwin v. State,* 514 S.W.2d 942, 945 (Tex.Crim.App.1974). In the case of hard core pornography intended to appeal to a particular deviant audience, generally it is not necessary that the jury have an understanding of that group's interests, prurient or otherwise; the pornography speaks for itself. *See United States v. Thomas,* 613 F.2d 787, 790–91 n. 2, 793–94 (10th Cir.) (child pornography), *cert. denied,* 449 U.S. 888, 101 S.Ct. 245, 66 L.Ed.2d 114 (1980); *United States v. Young,* 465 F.2d 1096, 1098–99 (9th Cir. 1972) (graphic detailing of heterosexual intercourse, fellatio, cunnilingus, anal intercourse, sodomy, masturbation, and oral-anal contact); *United States v. Wild,* 422 F.2d 34, 36 (2d Cir.1969) (homosexual materials), *cert. denied,* 402 U.S. 986, 91 S.Ct. 1644, 29 L.Ed.2d 152 (1971).

■■■ The *Paris Adult Theatre* Court noted that obscenity is not a subject that lends itself to the use of traditional expert testimony, which is usually admitted to explain to lay jurors what they could not otherwise understand. 413 U.S. at 56 n. 6, 93 S.Ct. at 2642 n. 6, 37 L.Ed.2d at 456 n. 6. Jurors in obscenity cases need no such assistance unless the contested materials are directed at such a bizarre deviant group that the experience of the trier of fact would be plainly inadequate from which to judge whether the materials appeal to the prurient interest. *Id.*

T.K.'s cites *United States v. Klaw,* 350 F.2d 155 (2d Cir.1965) to support its assertion that expert testimony was required in the instant case. The material in *Klaw* consisted of items related to "bondage." *Id.* at 157. In reviewing the defendant's challenge to the sufficiency of the evidence, the court stated, "if proof of prurient stimulation and response is generally important, it is particularly necessary when the prurient interest may be that of a deviant segment of society *whose reactions are hardly a matter of common knowledge." Id.* at 166 (emphasis supplied).

■■■ The magazines in this case were marketed to individuals interested in mate-swapping, whether heterosexual, homosexual, or bisexual. The magazines depict, by photos and textual material, explicit sexual acts between heterosexuals and homosexuals. T.K.'s cannot seriously argue that these magazines are intended to induce reactions that "are hardly a matter of common knowledge." We find the experience of the jury rendered it more than adequate to judge whether the magazines appealed to the prurient interest.[4]

■■■ Because we find the magazines themselves are evidence sufficient to sup-

---

4. *See United States v. Petrov,* 747 F.2d 824, 836 (2d Cir.1984), *cert. denied,* 471 U.S. 1025, 105 S.Ct. 2037, 85 L.Ed.2d 318 (1985) (*"United States v. Klaw,* 350 F.2d 155 (2d Cir.1965), is properly understood to require expert testimony that ma-

terial appeals to the prurient interest of a deviant group only when the material portrays conduct not generally understood to be sexual.") (Newman, J., dissenting in part).

port T.K.'s conviction, we overrule T.K.'s second point of error.

The trial court's judgment is affirmed.