**UNITED STATES of America,
Plaintiff,**

v.

**Ferris J. ALEXANDER and Edward J.
Alexander, Movants.**

**Nos. 1–377 to 1–379 REC.**

United States District Court,
D. Minnesota,
Fourth Division.
April 25, 1969.

Patrick J. Foley, U. S. Atty., Minneapolis, Minn., for plaintiff.

Irving R. Brand and Ralph Strangis, Minneapolis, Minn., for movants.

## ORDER

NORDBYE, District Judge.

This proceeding is before the Court on a motion to suppress filed by the above-named movants seeking to suppress for use as evidence in any hearing or trial all items seized under three search warrants for the search in the daytime of (1) 8th Floor, Edison Building, Minneapolis, Minnesota; (2) 3rd Floor, Edison Building, Minneapolis, Minnesota; (3) the Economy Book Store adjacent to 417 Hennepin Avenue, Minneapolis, Minnesota.

The search warrants in question were issued on February 8, 1969, under Rule 41, Federal Rules of Criminal Procedure, by a United States Commissioner, District of Minnesota, on the affidavits of one Richard A. Anderson, an agent of the Federal Bureau of Investigation, and certain exhibits, said affidavits being dated February 8, 1969. The affidavits upon which the three search warrants were issued are substantially the same and one of them is attached hereto as Exhibit A. The returns are also attached and marked Exhibit B. The searches were consummated on February 8, 1969.

The motion to suppress sets forth the grounds therefor as follows: (1) The seizures under the search warrants were illegal because the search warrants were issued without a prior judicial determination in an adversary hearing as to the obscenity of the items seized, in contravention of Amendment I, Constitution of the United States; (2) there was not probable cause for believing that the items listed in the search warrant were used or intended for use as a means of committing the criminal offenses referred to in the warrants, or that movants had committed or intended to commit the offense referred to in said warrants; (3) there was not probable cause for believing that the movants herein had any connection with the items listed in the search warrants; (4) the items seized under the search warrants were not the items described therein; (5) the search warrants were illegally executed in that the officers executing them seized a great number of items, none of which were described in the search warrants; and (6) the search was unreasonable and the warrants illegally issued because the search and search warrants were based upon an affidavit which had attached to it items which had been illegally obtained.

That there was sufficient probable cause for the issuance of the three search warrants by the United States Commissioner and the searches and seizures which were made thereon and in accordance therewith by the agents of the Federal Bureau of Investigation, on this showing, at least, seems clear. The fortuitous circumstances as disclosed in the affidavits before the Commissioner which prompted the Emery Freight Company to make an examination in New York of certain air shipments destined to the Cloister House Gifts, 8th Floor, Edison Building, 417 Hennepin Avenue, Minneapolis, Minnesota, was carried on within the authority granted to an interstate carrier under the tariff regulations. The Commissioner who issued the search warrants not only had the detailed affidavits of the F. B. I. agent as to the obvious obscenity of the contents of the shipment, but, in addition, there were submitted to him a copy of the photographic magazine called "Paris" and a film which had been taken from the shipment in New York and sent to the F. B. I. agents in Minneapolis before the search warrants were issued and which articles lent compelling credence to the contents of the affidavits of the F. B. I. agent which stated that the material in the shipment was designed and intended to be used as a means for committing a

criminal act under Section 1462, U.S.C., Title 18. This section reads, in part,

"Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly uses any express company or other common carrier, for carriage in interstate or foreign commerce—

"(a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character; or

\*   \*   \*   \*   \*   \*

"Whoever knowingly takes from such express company or other common carrier any matter or thing the carriage of which is herein made unlawful—\* \* \*."

The only question of any import presented herein is whether these movants should have been afforded an adversary hearing before any seizure was authorized by the United States Commissioner. It may be noted in passing, however, that there is no showing or even contention that on any adversary hearing the material seized could conceivably be shown to be of a nonobscene nature. The movants rely primarily upon a Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809. The majority of the court in that case held, at pp. 206, 207, and 208, 84 S.Ct. at p. 1724:

"Under a Kansas statute authorizing the seizure of allegedly obscene books before an adversary determination of their obscenity and, after that determination, their destruction by burning or otherwise, the Attorney General of Kansas obtained an order from the District Court of Geary County directing the sheriff of the county to seize and impound, pending hearing, copies of certain paperback novels at the place of business of P–K News Service, Junction City, Kansas. After hearing, the court entered a second order directing the sheriff to destroy the 1,715 copies of 31 novels which had been seized. The Kansas

Supreme Court held that the procedures met constitutional requirements and affirmed the District Court's order. 191 Kan. 13, 379 P.2d 254. Probable jurisdiction was noted, 375 U.S. 919, 84 S.Ct. 268, 11 L.Ed.2d 163. We conclude that the procedures followed in issuing the warrant for the seizure of the books, and authorizing their impounding pending hearing, were constitutionally insufficient because they did not adequately safeguard against the suppression of nonobscene books. For this reason we think the judgment must be reversed. Therefore we do not reach, and intimate no view upon, the appellants' contention that the Kansas courts erred in holding that the novels are obscene."

But however far reaching the decision of the Supreme Court in that case may be regarding the denunciation of laws and procedure, which, without an adversary hearing, operate as a restraint upon the circulation and dissemination of books, magazines, motion picture films, etc., in violation of the constitutional restrictions directed against the abridgement of freedom of speech and press, it would be an undue and shockingly unwarranted extension of the protection granted by the Federal Constitution under Amendment I to extend the principles elucidated in *Books* to the present situation. Here, we are not dealing with books and films having currency in the daily lives of the American people. The record before the United States Commissioner unmistakably establishes, and this is not denied, that this shipment in commerce from New York to Minneapolis to these movants consisted of hard-core obscenity. And as observed by Mr. Justice Stewart in his concurring opinion in *Books*, page 214, 84 S.Ct. page 1727, "If this case involved hard-core pornography, I think the procedures which were followed would be constitutionally valid, at least with respect to the material which the judge 'scrutinized.'" From a casual examination of the magazine "Paris" which was before the United States Commissioner, one must assume from the affi-

davit of Richard A. Anderson, the F. B. I. agent, that that magazine is typical of the contents of the other pictures, films, and illustrations in this interstate shipment. It is apparent from the showing made before the Commissioner that we are not dealing with current literature and motion picture films of a nature whereby an ex parte restraint will endanger the constitutional rights of the public to have access to constitutionally protected expressions. The material seized is not the type of material which is afforded to the general public. Common knowledge and ordinary common sense tell us that this material is handled furtively and secretly under the counter, so to speak, in a manner similar to the dispensing of contraband, such as narcotics. Indeed, if these movants were entitled to an adversary hearing before the government officials could seize and retain this shipment as evidence in a contemplated criminal proceeding, it is entirely probable that the material in question would never be made available to the government so as to enable the government officials to present it at a so-called adversary hearing. Where material of this nature is patently, and indeed shockingly, obscene, the Court should not assume to conjure up the fiction that, without an adversary hearing before seizure to determine whether the material is obscene, the constitutional rights of these movants or the public under the First Amendment will be endangered. Here, the movants may be granted a speedy hearing, if they desire, as to the question of obscenity, or as to whether any material seized was not sufficiently described in the search warrant.

The movants state, however, that the question of obscenity is not before the Court. They do not admit obscenity and they do not seek a hearing at this time on that issue. But obviously the Court must consider the showing made before the Commissioner as to the basis upon which he relied for the issuance of the search warrant. Granted that where it seems probable that constitutional interdiction stamps the law authorizing, or

the methods used in, the search as illegal without an adversary hearing, the Court is not concerned with the question of obscenity. That principle, however, is not applicable where a search was made under Rule 41, Federal Rules of Criminal Procedure, and where it is convincingly apparent that no constitutional rights of the movants or the public have been violated by the search instituted and consummated under that rule. The Court is fully aware that there may be a fine line of distinction as between obscene and nonobscene literature, pictures and films. Moreover, it is common knowledge that there is an ever-present danger when over-zealous law enforcement officials infringe the rights of the public under the First Amendment by ex parte search warrants and thus deprive the people of free access to nonobscene edification during the period of sometimes long and protracted obscenity hearings. But in the instant situation no such contention is made or even suggested; that is, the movants do not contend that the public are being deprived of nonobscene pictures and films by reason of the fact that a search warrant was issued before any adversary hearing was held. And to extend the teachings of *Books*, supra, Marcus v. Search Warrants, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127, Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469, and many other cases of the lower courts relied upon by the movants herein would create a shield of immunity from the law in question to purveyors of lascivious material handled on the market as contraband.

This Court judicially determines from the record herein that there is at least a sufficient number of pictures and films seized herein which must be classified as lewd and obscene within the meaning of the statute involved and that there is a total absence of any showing that there has been a violation of the First Amendment to the Constitution of the United States by reason of this seizure without first conducting an adversary hearing.

It follows from the foregoing that the movants' motion must be, and hereby is, in all things denied. It is so ordered. Exceptions are reserved.

---

Form A. O. 108   JEC:dmp                    EXHIBIT A                    Affidavit for Search Warrant

# United States District Court
## FOR THE
## DISTRICT OF MINNESOTA

Commissioner's Docket No. ...............

UNITED STATES OF AMERICA

vs.

FERRIS J. ALEXANDER and
EDWARD J. ALEXANDER

Case No. ...............

AFFIDAVIT FOR
SEARCH WARRANT

BEFORE   Robert Chial                Ramsey County Courthouse, St. Paul, Minn.
         Name of Commissioner              Address of Commissioner

The undersigned being duly sworn deposes and says:

That he (has reason to believe) that (on the person of) the 8th floor,
         (is positive)[1]              (on the premises known as)
Edison Building, 417 Hennepin Avenue, Minneapolis, Minnesota

in the State and    District of Minnesota

there is now being concealed certain property, namely seven lockers measuring 30"x12"x17"
and an 8th locker is 30"x12"x20". The lockers are covered with brown
cardboard covering of fiber composition with metal banding on the edges.
All pieces are steel banded.

which are designed and intended for use, and which have been used, as the
means of committing the criminal offense, to wit, a violation of
Title 18, U.S.C., § 1462.

        And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant
are as follows: I received a teletype at 11:28 PM, February 7, 1969, from
Bureau Agents in New York City, New York, Field Office advising me
that an Emery Freight driver picked up eight foot lockers labeled
as containing gift items being shipped from Ideal Gift Sales, 100
Van Dam Street, New York City, N. Y., to Cloister House Gifts, Edison
Building, 6th floor, 417 Hennepin Avenue, Minneapolis, Minnesota,
under Emery Airbill NYC 87250. After pick up, shipment was brought
to Emery Cargo, John F. Kennedy Airport, New York City. Two of the
lockers had holes in their sides from handling or possible pilferage
and contents were exposed. In view of these facts, shipment was
examined by Frank Joseph, Senior Supervisor, and Jack Tyndall, Emery

Freight. The opened locker contained reels of 8 mm film and the other contained issues of a magazine entitled "PARIS." Their examination revealed that the magazine and film showed males and females in the acts of sexual intercourse and perversion.

On the basis of the above observations and the right of Emery to examine shipments under their tariff regulations, they examined the remaining six lockers and found them to contain 8 mm reels showing acts of sexual intercourse and perversion.

A reel in each box was marked. The markings are as follows:

Carton number one contained over 500 reels of 8 mm black and white film. One reel showed two men and one woman committing acts of sexual intercourse and perversion. Reel was marked number eight and an X marked on inner rim. One reel marked number twenty one was entitled "Woman's Bodies Yield" (remainder of title illegible) and showed one man and one woman committing acts of sexual intercourse and perversion.

Reel marked number ten entitled "The Plumber" showed two women and one man committing acts of sexual intercourse and perversion. X placed on inner rim of reel. Reel marked number seven showed one colored man and white woman committing acts of sexual intercourse and perversion. X marked on inner rim.

Carton number two contained several hundred reels of film, 8 mm black and white. Reel marked number eight entitled "How to Make a Girl Sandwich" depicted two white males and one white female committing various acts of sexual intercourse and perversion. Reel marked with X on inner rim.

Carton number three contained over one thousand booklets entitled "New Frolics Sixtynine" and "Way Out (Four)". Booklets showed various stages of sexual intercourse and perversion. Three "Frolics" and one "Way Out" booklet initialed FJ and JT.

Carton four contained several hundred reels of eight mm black and white film. Reel marked number twelve entitled "Two's Company Three's a Crowd Four's an Orgy" showed two white males and two white females committing various acts of sexual intercourse and perversion. Reel marked with X on inner rim.

Carton number five contained over one hundred reels of 8 mm black and white film, plus over one hundred sets of photos, Six photos to a set. Reel marked number twenty entitled "The Sexy Reckless Foursome" showed two males and two females having intercourse. Reel marked X on inner rim. Photos were black and white and colored and showed various acts of intercourse and perversion between both sexes. One black and white and one colored set initialed FJ and JT.

Carton number six contained several thousand booklets and photos in color. Booklets entitled "Way Out" and "New Frolics" all showed acts of sexual intercourse and perversion. Photos were in sets of six. Initials JT and FJ placed on four "Way Outs", one "New Frolics" and three sets of photos.

Carton number seven contained over one thousand booklets entitled "PARIS" and "Times Square" showing groups of mixed sexes committing acts of sexual perversion. Initials JT and FJ placed on six "Paris" booklets and on two "Times Square" booklets.

Carton number eight contained over one thousand booklets entitled "Night" and "Paris" which showed acts of sexual intercourse and perversion. Four booklets initialed JLT and FJ.

One film and one copy of the magazine entitled "PARIS" was forwarded to me by Agents of the New York Office. I have examined the contents of the magazine and the film and they show males and females engaged in acts of intercourse and acts of sexual perversion. The magazine and the film are attached to the original of this Affidavit.

On Saturday morning, February 8, 1969, I accompanied Eugene Peterson, a part time Emery Freight Company truck driver, when he delivered eight lockers from Wold Chamberlain International Airport, Minneapolis, to the Edison Building, 417 Hennepin Avenue. We arrived in front of the Edison Building on Hennepin Avenue at approximately 10:30 AM. We were told by two people known to me as Ferris and Eddie Alexander to go to the rear of the building, which we proceeded to do. The eight lockers which were delivered to the Edison Building were addressed to Cloister House Gifts, 8th floor, 417 Hennepin Avenue. The freight bill which Mr. Peterson had in his possession showed a shipment of eight lockers from Ideal Gift Sales, 100 Van Dam Street, New York City, to Cloister House Gifts. Eugene Peterson, the driver, advised me that the eight lockers were placed on the freight elevator at the rear of the Edison Building. Then freight bill was signed by Eddie Alexander who paid him in cash for the shipment.

Agents of the Minneapolis Office, and from my own investigations, we have established that Eddie, Ferris and John Alexander have operated a store at 419 Hennepin Avenue from which they sell books and magazines.

The Edison Building, 417 Hennepin Avenue, is adjacent to the Alexander's book store. The directory on the first floor lists Cloister House, Inc., 8th floor.

EXHIBIT B

Minneapolis, Minn
February 8, 1969

Items taken from floor eight, 717
Hennepin Avenue, Minneapolis, Minn.
on 2-8-69.

66 reels of 8 mm film marked #1
67 reels of 8 mm film marked 2
69 reels of 8 mm film marked 3
58 reels of 8 mm film marked 4
63 reels of 8 mm film marked 5
58 reels of 8 mm film marked 6
56 reels of 8 mm film marked 7
60 reels of 8 mm film marked 8
56 reels of 8 mm film marked 9
48 reels of 8 mm film marked 10
61 reels of 8 mm film marked 11
52 reels of 8 mm film marked 12
50 reels of 8 mm film marked 13
67 reels of 8 mm film marked 14
54 reels of 8 mm film marked 15
63 reels of 8 mm film marked 16
65 reels of 8 mm film marked 17

[A2037]

Page #2

63 reels of 8 mm film marked 18
59 reels of 8 mm film marked 19
61 reels of 8 mm film marked 20
61 reels of 8 mm film marked 21
59 reels of 8 mm film marked 22
59 reels of 8 mm film marked 23
59 reels of 8 mm film marked 24
56 film cartons marked Sweet Treat 1
54 film cartons marked Sweet Treat 2
69 film cartons marked Sex Exercise
13 film cartons marked Avon Lady
67 film cartons marked Sleeping Beauty
4 green foottockers
1 slip of paper numbered 1 through
25 and bearing typewritten titles

2 stamp pads, 2 stamp letter holders
and miscellaneous rubber type

Witness: SA Donald W. Peterson, FBI, Mpls. Minn
SA Francis R Grady, FBI Mpls, Minn

[A2039]

Minneapolis, Minnesota
February 8, 1969

Items taken from Economy Bookstore
which store is immediately adjacent to
entrance of Edison Building, 417 Hennepin
Av., Minneapolis, Minnesota. Items taken 2/8/69

42 copies of Way Out #1
40 copies of Way Out #2
30 copies of Way Out #3
28 copies of Way Out #4

29 copies of New Frolics '69 Volume #1
29 copies of New Frolics '69 Volume #2
28 copies of New Frolics '69 Volume #3
32 copies of New Frolics '69 Volume #4

Witness: SA Richard A. Anderson, FBI, Mpls, Minn
SA Gerald Stanley, FBI, Mpls, Minn.

[A2038]