### UNITED STATES of America
### v.
### Dennis E. PRYBA, Herman L. Womack, Potomac News Company.
### Crim. No. 1573–69.

United States District Court, District of Columbia.
April 2, 1970.

Thomas A. Flannery, U. S. Atty.,
Thomas C. Green, Asst. U. S. Atty., for
plaintiff.

Stanley M. Dietz, Washington, D. C.,
for defendants.

## MEMORANDUM OPINION

PRATT, District Judge.

Defendants are charged in a two-count indictment with violations of 18 U.S.C. § 1462 and 22 D.C.Code § 2001(a) (1) (E) (Supp. II, 1969). The first statute makes it a crime knowingly to receive from a common carrier obscene material[1] shipped in interstate commerce. The second prohibits knowing possession of obscene matter with the intent to disseminate such matter.

Defendants have filed a motion to suppress alleging, *inter alia,* that an adversary judicial proceeding should have been held prior to the seizure of the material alleged to be obscene for a determination whether the motion pictures are obscene under the appropriate standards. In the alternative, the motions attack the sufficiency of the affidavit in support of the search warrant and the constitutionality of the regulation pursuant to which the inspection of the package was made.

For the reasons stated below, the motion to suppress is denied and the procedure by which the seizure was effected in this case is upheld.

## I. THE FACTS

The affidavit in support of the search warrant issued in this case recited that a package was delivered to United Air Lines in San Francisco, California, on May 20, 1969 by an individual identifying himself as Tom Moore. The United Air Lines supervisor, Robert Miller, caused the package to be opened because of "peculiar circumstances surrounding receipt of the shipment." These circumstances include that the package measured 4″ x 10″ x 13″ and weighed seven pounds, that the individual delivering the package was extremely nervous, that the individual evaded questions as to the contents of the package but finally stated it contained "personal items" and that the return address was fictitious.[2] Upon opening the package, Mr. Miller observed thirty rolls of film which he concluded were hard core pornography after personal observation of them. The affidavit recites that "the films depict a man and a female engaged in sexual intercourse, and various other sexual activities by males and males and males and females." The package was then returned to the normal shipping route and the above information was relayed to FBI agents.

The package was shipped via United Air Lines, on May 21, 1969 and arrived at Dulles Airport later the same day. On May 22, 1969, the package was given to a delivery service for transmittal to the addressee. Delivery was made at 3:30 P.M. on May 22, 1969 to the Potomac News Company at 507 8th Street, S. E., Washington, D. C. After leaving said premises, the delivery driver was questioned by FBI agents who had observed him and he admitted making delivery of the above described package at said address.

With this information the agents, at 4:10 P.M. on May 22, 1969, requested and obtained a search warrant for the premises of 507 8th Street, S. E. from a United States Commissioner. FBI agents then went to the above premises. Soon after their arrival at 4:35 P.M., the package was retrieved from the ceiling of the defendants' office building by one of the employees at the direction of defendant Womack.

On May 27, 1969, the government offered to hold an adversary hearing on the issue of obscenity before Judge Gasch of this Court. When the proceeding began, counsel for the defendant apparently took the position that he merely acquiesced in the proceeding since it had not been scheduled prior to the seizure and since neither side had expert testi-

---

1. The applicable statutory language reads: "(a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character;"

2. The facts are unclear as to whether Mr. Miller knew the address was fictitious at the time he opened the package.

mony. In essence, defense counsel expressed no interest in participating in the hearing. The films were shown, but because of the statements of defense counsel, Judge Gasch did not conclude whether the films were obscene.

## II. A PRIOR ADVERSARY HEARING WAS NOT REQUIRED.

█ Defendants argue that an adversary hearing should have been held prior to the seizure in this case for the purpose of determining whether the materials ultimately seized were obscene. Defendants rely on A Quantity of Books v. Kansas[3] and its progeny in support of their argument. E. g. Metzger v. Pearcy et al., 393 F.2d 202 (7th Cir. 1968); Sokolic v. Ryan, 304 F.Supp. 213 (S.D. Ga.1969); City News Center, Inc. v. Carson, 310 F.Supp. 1018 (M.D.Fla. Feb. 25, 1970); Bongiovanni v. Hogan, 309 F.Supp. 1364 (S.D.N.Y. Feb. 10, 1970). The rationale underlying A Quantity of Books, supra, and cases decided in reliance thereon, is that a procedure which permits the seizure and impounding of books or other material, absent an adversary hearing on the issue of obscenity, is violative of the First Amendment in that such a procedure does not adequately safeguard against the suppression of non-obscene material.

██ The requirement of an adversary hearing prior to seizure must be examined in the light of the precise facts of the particular case. It cannot be applied rigidly and mechanically. The cases cited by defendants deal exclusively with situations where the allegedly obscene material was in the public domain at the time of seizure or where massive seizures have occurred. In such cases the public interest in viewing non-obscene materials requires that a hearing be held prior to seizure to ensure that the materials about to be seized or confiscated are, in fact, obscene. Additionally, a chilling effect on the exercise of First Amendment rights may result from such a seizure or from an arrest for publicly selling or displaying materials which conceivably are not obscene. An adversary hearing can be held in those cases where a film is shown at a theater or where books are for sale in stores since a request for a copy might be honored and certainly a purchase can be made. See Bethview Amusement Corp. v. Cahn, 416 F.2d 410, 412 (2d Cir. 1969). Likewise, where bulk shipments of materials are involved or where films are being publicly displayed, the location of the materials for a period of time is easily determined and there exists the likelihood of obtaining a copy of the material either by court order or with the consent of the owner. Metzger v. Pearcy et al., supra. Moreover, the issuance of an injunction against removal could be readily enforced. Cf. United States v. Brown, 274 F.Supp. 561 (S.D.N.Y.1967).

█ In the case at bar, however, the existence of a public interest in viewing these materials is not readily apparent. The furtive manner of their shipment and their concealment at their destination lend credence to the argument that these films were never intended for public display or viewing. No contention has been made that these thirty films would immediately have been viewed by a large number of persons or offered to the public at large.[4] Obviously, at the time of seizure the materials, lodged in a ceiling, were not in the public domain. For the same reasons, any resulting adverse effect on dissemination of other First Amendment protected materials is nonexistent in this case. These defendants were not showing the films at a theater or even in "peep machines." In fact, the instant case presents precisely the situation which has been recognized as an exception to the prior adversary hearing doctrine.[5]

3. 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964).

4. In fact, defendants' counsel at the hearing of the present motion to suppress asserted that the films were not for public sale or distribution.

5. United States v. Alexander, 313 F.Supp. 687 (E.D.Minn. April 25, 1969). Sig-

Additionally, none of the cases cited by defendants address themselves to the impracticality, not to say impossibility, of holding a prior adversary hearing in the situation at bar where obscene materials surreptitiously placed in the stream of interstate commerce are fortuitously discovered by a civilian employee. In such circumstances, officers, after the parcel has been repacked, sent on its way, and traced to its destination, should not be required to make the futile gesture of requesting that copies be made available for viewing by a judicial officer prior to the institution of criminal proceedings. That a defendant would cooperate voluntarily is unlikely particularly in a case where hard core obscenity is involved. Moreover, to believe that the same films would be proffered to the court in the same condition as when first viewed by the employee is to blink reality. To require the prosecution to institute civil proceedings or to issue a subpoena duces tecum would be equally impractical and would render the enforcement of 18 U.S.C. § 1462 virtually impossible.[6] Defendants have suggested no practical method whereby a prior adversary hearing in the instant case could have been achieved.

Finally, the minimal public deprivation and any chilling effect on the exercise by defendants of constitutionally protected rights were diminished by the government's proffer of an adversary hearing on the issue of obscenity attempted to be held only five days after the seizure. Had these materials been non-obscene, such a determination could have been promptly made following the seizures and the materials returned to defendants for such public or private display as they desired. Defendants waived the opportunity to participate in this hearing, however, and with it gave up the opportunity immediately to require the prosecution to demonstrate that these materials were obscene and therefore unfit for public consumption. The apparent nature of the films involved supplies convincing reasons for the defendants' disinterest in having such a hearing.

In short, we hold that an adversary hearing on the issue of obscenity prior to seizure was not required under the facts of this case.

III. IT WAS NEITHER NECESSARY NOR PRACTICAL FOR THE COMMISSIONER TO VIEW THE FILMS.

Defendants also argue that the Commissioner should, at least, have viewed some of the materials before he issued the search warrant. As should be obvious from the prior discussion, a view of materials which are in the public domain by virtue of display or offer for sale is more easily accomplished than a view of materials accidentally discovered in interstate commerce. Defendants again are unable to offer any suggestion as to how such materials could or would be made available for a viewing. If federal officers or persons acting at their direction removed materials from interstate commerce for a judicial viewing, serious Fourth Amendment problems might be presented.[7] If officers are required to proceed civilly or with the consent of the owner in obtaining copies for viewing, the same practical difficulties previously discussed would be presented. Where probable

---

nificantly, two recent decisions involving § 1462 have failed to discuss the requirement of a prior adversary hearing, focusing instead on the sufficiency of the affidavit in support of the search warrant. United States v. Melvin, 419 F.2d 136 (4th Cir. 1969); United States v. Rich, 407 F.2d 934 (5th Cir. 1969), cert. denied, 395 U.S. 922, 89 S.Ct. 1775, 23 L. Ed.2d 239 (1969).

6. Defendant does not challenge the constitutionality of § 1462 in this proceeding.

It should be noted that the validity of this statute has recently been reaffirmed. United States v. Melvin, supra, note 5.

7. But cf. United States v. Alexander, supra, where the Court alluded to the desirability of the magistrate's viewing some of the materials alleged to be obscene in a § 1462 prosecution. However, the Court failed to discuss the manner in which this objective might be accomplished lawfully.

cause is adequately established by the underlying affidavit, a court should not require a view of the material as well. The materials were not required to be furnished to the Commissioner prior to the issuance of the warrant.

## IV. THE AFFIDAVIT IN SUPPORT OF THE WARRANT WAS SUFFICIENT.

■ Defendants allege alternatively that the affidavit in support of the search warrant was insufficient and could not support a finding of probable cause that an offense had been committed or that the materials in the package were obscene. This contention is likewise without merit.

The affidavit in its four corners reveals that a parcel was placed in interstate commerce in California under circumstances indicating that its contents might not be the personal belongings stated by the sender. The size and weight of the package suggested that it might contain movies or books, and the sender was evasive in identifying its contents. A responsible official of a well-known airline opened the package, personally inspected the contents and concluded the package carried hard core pornographic films. His description of the films certainly supplied an indication that these films were not the so-called art films or foreign films which might display some nudity. The sender had given a fictitious address and a commonplace name that might well have been fictitious. Finally, the materials were received in Washington, D. C. at a particular address.

These facts sufficiently established probable cause to believe that a violation of 18 U.S.C. § 1462 had occurred. First, the magistrate was informed of the underlying circumstances surrounding the sending of the parcel and its examination by Mr. Miller, the United Air Lines supervisor. He could properly have concluded that this official, who reported to the FBI, was, by virtue of his position alone, a credible and reliable source of information. Second, Mr. Miller's conclusion that the shipment contained hard core obscenity was entitled to credence by the magistrate especially since the brief description of the films themselves verified that conclusion.[8] The magistrate could have fairly concluded that the bulk of the films probably displayed a number of obscene sequences depicting graphically various homosexual and heterosexual acts including intercourse and sodomy. He would have been naive to have reached any other conclusion. Any objections under *Spinelli*[9] and *Aguilar*[10] are thus satisfied.

■ Some courts have wrestled with doubts concerning the applicable standard for the issuance of warrants in First Amendment areas. E. g. Merritt v. Lewis, 309 F.Supp. 1254 (E.D.Cal. Jan. 28, 1970); Epstein v. Three Search Warrants, 97 Wash.L.Rptr. 1933 (Oct. 15, 1969). These doubts might lead to requiring such thorough descriptions of the materials in the affidavit that a magistrate may determine obscenity as a matter of law. Where the procedures of the instant case are followed, however, these doubts need not linger. While probable cause means something more than mere suspicion that the defendants were violating the federal obscenity laws, it does not require evidence to support a conviction. United States v. Rich, *supra*. The standard that a magistrate must have probable cause to believe the obscene materials had been carried in interstate commerce before issuing a search warrant is sufficient to safeguard any First Amendment rights

---

8. After stating that "the films depict a man and a female engaged in sexual intercourse," the affidavit refers to the showing of "*other sexual activities by males and males and males and females.*" Further descriptive detail is hardly necessary or appropriate and should not be required.

9. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1968).

10. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

until a prompt adversary hearing on the issue of obscenity is held. A court need not additionally require a magistrate to conclude from detailed descriptions that the materials are in fact obscene. Especially is this true where, as here, other circumstances bolster the conclusion that the materials are obscene. The search warrant was properly issued and the resulting seizure was lawful.

## V. THE CONSTITUTIONALITY OF THE C.A.B. REGULATION.

Finally, defendants contend that the regulation pursuant to which the package was opened by Mr. Miller is unconstitutional. C.A.B. No. 96, Rule No. 24 (Nov. 18, 1967). This contention ignores the fact that the initial search was not at the behest of federal authorities. Rather, it was an independent investigation by the carrier. A constitutional claim is therefore not presented. Gold v. United States, 378 F.2d 588, 591 (9th Cir. 1967). Furthermore, in the present climate of bomb scares, it is difficult to believe that anyone would seriously challenge as unconstitutional the authority delegated to airline personnel to examine the contents of baggage and freight deposited for carriage.