**UNITED STATES of America**

v.

**Thomas GOWER.**

**Crim. No. 9–70.**

United States District Court, District of Columbia.

Sept. 16, 1970.

Donald Bucklin, Asst. U. S. Atty., Washington, D.C., for the United States.

Sol Rosen, Washington, D.C., for defendant.

## MEMORANDUM

GASCH, District Judge.

The defendant is charged with violation of 22 D.C.Code § 2001(a) (1) (A); § 2001(a) (1) (E) which make it a crime to knowingly sell or possess with intent to sell obscene material.

The defendant made a pretrial motion to dismiss on the grounds that: (1) He was denied a prior adversary hearing to determine whether the materials which are the subject of the charge were obscene; (2) The practices of the Morals Division of the Metropolitan Police Department in enforcing the applicable provisions of the District of Columbia Code are irrational and without any basis and therefore deprive the defendant of due process of law and equal protection of law; (3) That the sections of the District of Columbia Code under which the defendant is charged are unconstitutionally vague in defining proscribed conduct; (4) The defendant has a right to possess obscene materials, including hard-core pornography, because it is protected free speech under the First Amendment of the United States Constitution.

The Court found none of the above contentions to have merit and denied defendant's motion to dismiss. The defendant then waived his right to a jury trial and was found guilty by the Court on the basis of the evidence presented.

## FACTS

The defendant was operating Tommy's Bookstore located at 1812 Adams Mill Road, N.W., in the District of Columbia. On October 10, 1969, Officer Joseph J. Rivera, a member of the Metropolitan Police Department assigned to the Morals Division, working undercover, entered Tommy's Bookstore, and, feigning to speak only Spanish, made known to the defendant his desire to purchase some photographs similar to two that Officer Rivera showed to the defendant which depicted nude males and females engaged in sexual acts. The defendant instructed Officer Rivera to wait until some of the people in the bookstore left. Thereupon the defendant produced from under the counter two packets of six photos each (4 inches by 5 inches) which he sold to Officer Rivera for Three Dollars ($3.00) per packet. These photographs depicted nude males and females engaged in sexual intercourse, fellatio, cunnilingus, and masturbation. The genital organs of all participants were exposed.

Four days later, on the afternoon of October 14, 1969, Officer Rivera returned to Tommy's Bookstore and through an interpreter asked the defendant if he could purchase films similar to the photos previously purchased. The defendant then sold Officer Rivera a reel of film from under the counter for $20.00. At that time the defendant wrote down the prices of films on a brown paper bag along with the word "police." The film was a black and white silent movie which showed three women and a man engaging in repeated acts of sexual intercourse, fellatio, cunnilingus and masturbation.

Subsequently, an affidavit relating the above happenings and the contents of the film and the photos were presented by the Metropolitan Police Department to a U. S. Magistrate who, thereupon, issued a search warrant for the premises of 1812 Adams Mill Road, N. W.

Officer Rivera next returned to Tommy's Bookstore on October 15, 1969, and asked the defendant about purchasing five films similar to the one already purchased. The defendant had only three under the counter, so he locked the bookstore and went with Officer Rivera to his (defendant's) car. When they arrived at his car, the defendant opened the trunk and reached into a large bag containing numerous films, photos and pamphlets, selected two additional films and handed over the five reels to Officer Rivera. At that point, Officer William Hampton of the Morals Division of the Metropolitan Police Department came on the scene and arrested the defendant and seized the materials in the trunk of the car.

## I.

■■ The Court will first consider defendant's argument that he was denied a necessary prior adversary hearing. The defendant relies mainly on Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1965) [1] (hereinafter "Books"). Upon consideration of the facts presented which reflected seizure of a large number of books, the Court held (citing Marcus v. Search Warrants of Property at 104 East Tenth St., Kansas City, Mo., 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); and Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957)) * * * "if seizure of books precedes an adversary determination of their obscenity, there is danger of abridgment of the right of the public in a free society to unobstructed circulation of non-obscene books." The requirement of an adversary hearing is, therefore, based on a threat of suppression or a chilling effect on distribution of non-obscene materials which are protected free speech

1. A state statute in this case defined obscenity, proscribed distribution of obscene materials, and authorized seizure before, and destruction after, an adversary hearing as to their obscenity. Here the warrants listed 31 titles and 1,715 copies were seized.

under the First Amendment. There is no doubt that movies in addition to books are afforded First Amendment protection.[2] There is division among the jurisdictions, however, as to the need for a prior adversary hearing in a situation such as the present. (United States v. Alexander, 428 F.2d 1169 (8th Cir. May 22, 1970); Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir. 1969), cert. denied 396 U.S. 985, 90 S.Ct. 478, 24 L.Ed.2d 449 (1969); Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2d Cir. 1969); Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968); Milky Way Productions, Inc. v. Leary, 305 F.Supp. 288 (3-judge court), aff'd 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (1970); United States v. Pryba, 312 F.Supp. 466 (D.D.C. April 2, 1970).

■ Counts one through five in the instant case can readily be distinguished from all of the above cases in that the materials which are the subject of the charge were *purchased* by an undercover policeman, and not seized. Here the two packets of photographs and the five films, which are the subjects of counts one through five, were purchased from the defendant prior to any seizure, and a conviction can be sustained on these materials alone if they are adjudged to be obscene without consideration of the materials (thirty films) which are the subject of count six. To require a prior adversary determination of obscenity vel non under the present facts would result in the absurdity of requiring the police undercover agents to have an adversary hearing before even making a purchase of suspected obscene materials.

■ As to the remaining count, count six, which involves the materials seized from the trunk of defendant's car, the Court agrees with the reasoning in the case of United States v. Pryba, 312 F. Supp. 466 (D.D.C. April 2, 1970), and Milky Way Productions, Inc. v. Leary, 305 F.Supp. 288 (3-judge court), aff'd 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (1970), and finds that there was no need for a prior adversary hearing as to a determination of obscenity in this particular case.

■ The Courts which take the opposing view rely mainly on Quantity of Copies of Books v. Kansas.[3] The Court in *Books*, dealing with a massive seizure of many types of books in the public domain, required a prior adversary hearing in order to protect against the possible seizure of non-obscene materials and an adverse effect on the First Amendment right of free speech. There is little danger of this in the present case where the material was not in the public domain, was handled furtively, and was separated here, even physically, i. e., under the counter and in the car trunk, from non-obscene materials. The public is not prevented from seeing or having available to it any non-obscene materials. The present case is clearly distinguishable from those requiring a prior adversary hearing.

These cases are inapposite since they involved massive seizures of books under state statutes which authorized warrants for the seizure of obscene materials as a first step in civil proceedings seeking their destruction. The seizures in this case were instrumentalities and evidence of the crime for which appellants were indicted and lawfully arrested.[4]

The *Alexander*[5] case, when presented with somewhat similar issues, held that there "must be an adversary hearing on the question of obscenity prior to the issuance of a warrant authorizing the

---

2. Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952); Interstate Circuit, Inc. v. City of Dallas, 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968).

3. Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1965).

4. United States v. Wild, 422 F.2d 34 (2d Cir. October 29, 1969).

5. United States v. Alexander, 428 F.2d 1169 (8th Cir. May 22, 1970).

*wholesale* seizure of allegedly obscene material." The *Alexander* case, however, relied mainly on three cases [6] which involve the seizure of film from a public theatre, a situation quite different from that involved here. We are involved here with materials which are not in the public domain, and we agree with *Pryba* that there is no danger to the suppression of First Amendment non-obscene speech. This is not a case of "protecting small unpopular minorities" or ideas not in common currency from suppression as set forth in the *Alexander* case in language criticizing *Pryba*. Nor was this (Count six) a "massive seizure" containing possible non-obscene materials, but rather a limited seizure of hard-core pornography, obtained with a search warrant issued after determination by a magistrate. The manner in which the defendant dealt with the material, i. e., keeping it under the counter or in the trunk of his automobile, is a pertinent factor to be considered.[7]

Under these circumstances, there is no need for a prior hearing in this particular case.

## II.

The Court finds unfounded the allegation of the defendant that the practice of the Metropolitan Police Department Morals Division is so irrational and without basis in enforcing the applicable provisions of the District of Columbia Code as to deprive the defendant of due process and equal protection of law. The police testified that hard-core pornography, i. e., pictures and films being sold under the counter, was their objective. Testimony was presented that following the purchases of the materials which form the basis of counts one through five the matter was submitted to the United States Attorney for his consideration and evaluation and after approval was obtained from that office, the independent judgment of the United States Magistrate was sought and secured in a search warrant.

## III.

■ The defendant argues that his right to possess obscene materials is protected by the First Amendment of the United States Constitution. Under some circumstances this is true.[8] Here the defendant is not charged with mere possession of obscene materials in the privacy of his home, but rather, with sale and possession with intent to sell. Defense counsel argues that if the right to possess obscene materials is to be meaningful, there must, likewise, be a right to purchase the same materials which would inherently include the right of someone to sell those materials.[9] If this were not true, the only other imaginable way legally to come into possession of obscene materials, so the argument must be, would be to make obscene home movies, developed at home, and shown at home to your family.

This Court finds, however, that the Supreme Court has consistently held that it is a legitimate interest of the state to proscribe selling of obscene materials,[10] and it refuses to expand the *Stanley* decision as the defendant suggests.

6. Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2d Cir. 1969) ; Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir.) cert. denied 396 U.S. 985, 90 S.Ct. 478, 24 L.Ed.2d 449 (1969) ; Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968).

7. See Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966).

8. Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969).

9. 48 Texas L.Rev. 647 (1970).

10. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) ; Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964) ; A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966) ; Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966) ; Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966).

## IV.

■ The Court finds the material presented to it constitutes hard-core pornography, and that, as such, the Government need not produce expert testimony about appeal to the prurient interest and contemporary community standards.[11] "Simply stated, hard-core pornography such as this can and does speak for itself."[12] The Roth-Memoirs test for obscenity contains three elements: The dominant theme of the material taken as a whole appeals to a prurient interest in sex; the material is patently offensive because it affronts contemporary community standards relating to the description and representation of sexual matters; and, the material is utterly without redeeming social value. In the present case it was neither alleged nor attempted to be proved that there was any redeeming social value in these materials. The Court has viewed the materials involved and finds that even if the Roth-Memoirs test were applied, the selling or the keeping of such material for sale would violate the local obscenity statute.[13]

The Court considered materials presented to it in a proffer by defense counsel. These materials were allegedly purchased by defense counsel in bookstores in Washington, D.C., and New York City from materials openly sold on the shelf. Counsel presented these books, which photographically depict many of the same acts as those shown in the materials which are the subject of the indictment, to illustrate that statutes governing obscenity are unconstitutionally vague and/or that police enforcement was arbitrary and capricious. (Cf. discussion in points II and V). He is in effect seeking to demonstrate that identical materials are widely sold and go unprosecuted by the police. The Court finds, however, the books *Without a Stitch; Oral Sex and the Law* (2 volumes); *Sex in Marriage* (2 volumes); *I Am Curious, Yellow;* and *Sexual Intercourse* can be distinguished from the materials which are the subject of the present indictment. At this time the Court is not called upon to rule whether these publications are obscene, but only that they are distinguishable from the hard-core pornography which is the subject of the indictment in this case. The books presented are of two types, novels and manuals. The two novels, *I Am Curious, Yellow,* and *Without a Stitch,* include pictures from the movies of the same names and might arguably be of some redeeming social value.[14] The other books purport to be manuals, presenting a how-to-approach to sex which, likewise, might arguably be of redeeming social value. *Cf. Human Sexual Inadequacy,* Masters & Johnson (1969) for a more scientific approach to the sex manual area.

## V.

■ The Court finds that the language used in 22 D.C.Code § 2001(a) (1) (A) and § 2001(a) (1) (E) is not so unconstitutionally vague as to deprive the defendant of equal protection of law or due process of law. The language reads: "It shall be unlawful in the District of Columbia for a person knowingly to sell, deliver, distribute, or provide any obscene, indecent, or filthy writing, picture, sound recording or other article or representation; to create, buy, procure, or possess any matter described in the preceding subparagraphs of this paragraph with the intent to dissemi-

11. United States v. Womack, 111 U.S.App. D.C. 8, 294 F.2d 204, cert. denied 365 U.S. 859, 81 S.Ct. 826, 5 L.Ed.2d 822 (1961); Morris v. United States, D.C.Ct.App., 259 A.2d 337 decided December 2, 1969; United States v. Wild, 422 F.2d 34 (2d Cir. October 29, 1969).

12. United States v. Wild, 422 F.2d 34 (2d Cir. October 29, 1969). *Cf.* also Justice Stewart: "I know it when I see it." Jacobellis v. Ohio, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964).

13. United States v. Wild, 422 F.2d 34 (2d Cir. October 29, 1969).

14. United States v. I Am Curious, Yellow, 404 F.2d 196 (2d Cir. 1969).

nate such matter in violation of this subsection." [15]  This same type language has repeatedly been upheld by the Supreme Court as constitutional in *Roth* and its progeny,[16] and we, likewise, hold it to meet the constitutional requirements.

---

15. 22 D.C.Code § 2001(a) (1) (A) ; § 2001(a) (1) (E).

16. Language approved in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957): 18 U.S.C. § 1461 —"obscene, lewd, lascivious, or filthy * * * or other publication of an indecent character."  Language approved

in Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966) : New York Penal Law, McKinney's Consol. Laws, c. 40, § 1141—"A person who * * * has in his possession with intent to sell, lend, distribute any obscene, lewd, lascivious, filthy, indecent, sadistic, masochistic or disgusting book * * *."