THE STATE OF OHIO *v.* DORNBLASER.

(No. 93911—Decided March 8, 1971.)

Common Pleas Court of Cuyahoga County, Criminal Branch.

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. George J. Sadd,* for plaintiff.
*Mr. George Wm. Joseph, Jr.,* for defendant.

PRYATEL, J. The grand jury returned an indictment against the defendant for the "sale of obscene films." Within season the defendant filed a Motion to suppress on two grounds: (1) that there was no prior adversary hearing on the question of obscenity; and (2) that R. C. 2905.34, under which the defendant was charged, is unconstitutional.

The facts in the instant case reveal that an operator of a service station at Whitethorn & Lorain in North Olmsted, was approached by R. E. (the codefendant), who stopped in for repairs to his auto and asked the operator if he were interested in purchasing some films and find a place where they could be shown. Upon inquiry as to their contents, the codefendant advised him that "they were of men and woman having sexual intercourse, acts of sodomy, things of that sort,"

The service station operator reported the conversation to the police who instructed him "to tell the codefendant that he would have some such friends and that he (the operator) did have a place to show films."

With the co-operation of the motel manager and Westlake Police, the showing was arranged for October 17, 1969, at 8:00 p. m.

Between 8:30 and 9:00 p. m., the codefendant arrived at the motel equipped with a projector and screen. Shortly thereafter the defendant arrived. In the room viewing the films were Patrolman Wolfe of the North Olmsted Police Department and employees of the Service Department. Upon prearranged signal, Lt. Marion Taylor, the officer in charge, was to move in along with fellow officers to make an arrest, if the films were "obscene."

According to uncontroverted testimony of the officers, the film "depicted sodomy and acts of sexual intercourse and various sexual acts." The defendant assisted in loading the film and ran the projector on one or two instances.

After the films were run, the defendant, in answer to a query, answered that the "colored films" were $35.00 and the "black and white films" were $14.00. The defendant then left the room and returned with additional films which displayed "unnatural sex acts between man and woman, two men and a woman, two women * * *."

Further testimony developed that the films were purchased from defendants with money advanced by the police.

There was no admission charged and the door was locked by the codefendant. The viewers were made up of police and service department employees and the service station operator. No adversary proceedings on the issue of obscenity were held. The arrests were made and both defendants were indicted for "sale of obscene film."

The defendant contends that he is entitled to adversary proceedings and bases his decision on the case of *State* v. *Brooks* (1970), 24 Ohio Misc. 125. An examination of that case shows that the conclusion reached there was based on *Marcus* v. *Search Warrant* (1961), 367 U. S. 717 and *A Quantity of Books* v. *Kansas* (1964), 378 U. S. 205.

In *Marcus*, the Circuit Court of Jackson County, Missouri, issued a search and seizure warrant against a wholesale distributor of magazines and books and operators of retail newsstands, under the authority of Missouri procedures permitting the search for and seizure of allegedly obscene publications preliminary to their distribution if the *Court* finds them to be obscene. (Italics ours.)

The essential facts are as follows: Lt. Coughlin of the Kansas City Police Department, Vice Squad, upon investigation of distribution of obscene magazines, visited the distributor's place of business and approached its manager, Homer Smay, and showed him a list of magazines. Smay admitted that, except for one magazine on the list, his company distributed them. Lt. Coughlin then purchased one magazine at each of five stands and subsequently swore out a complaint "that of his own knowledge the appellant kept for the purpose of sale * * * obscene * * * publications." No copies of any magazines purchased by the lieutenant were filed with the complaint or shown to the Circuit Judge who issued the warrant to search and seize the obscene material.

The distributor's stock of magazines ran "into hundreds of thousands and up to a million copies." On examining the publications, the officers did not restrict themselves to those on Lt. Coughlin's original list, but seized all magazines which, in their judgment, "were obscene * * * or ought to be picked up," as well as all copies. In total, 11,000 publications were seized from six places.

The Circuit Court and Supreme Court of Missouri upheld these procedures. The United States Supreme Court reversed, holding that Missouri procedures lacked the safeguards "to assure non-obscene material the constitutional protection to which it is entitled."

In ruling on that case, the United States Supreme Court concerned itself with appellant's contention that the protection of free speech and press assured by the Fourteenth Amendment against state abridgement was violated in that (1) seizure by police was allowed prior to determining whether the publications were obscene; and (2) the procedures permitted police officers to make a

determination after the warrant was issued as to which magazines were obscene and subject to seizure in violation of movant's freedom of speech and publication.

In support of the reversal, the court pointed out that the warrant was issued on the basis of the conclusions of a single officer without any scrutiny by the judge of any of the so-called "obscene" materials. Of the books suppressed, 180 publications were found not to be obscene. Only one-third of the publications seized were finally condemned and the court concluded that the procedures of the Missouri laws were too broad and did not meet the due process clause of the Fourteenth Amendment.

Under these conditions, the Supreme Court would not and did not sanction the state statutes that permitted such procedures. The judge who issued the warrant had no evidentiary facts before him on which he could determine the existence of probable cause and additionally, the procedure countenanced in Missouri did not accord due process demands to give nonobscene material the constitutional protection to which it is entitled.

Mindful of the holding of the U. S. Supreme Court in the *Marcus* case, and in an effort to avoid the pitfalls discussed there, the State Attorney General of Kansas in *A Quantity of Books* v. *Kansas*, filed an information pursuant to statute with the district judge alleging that a news service possessed obscene paperback novels. The Attorney General specifically identified the novels, and the judge conducted a 45 minute *ex parte* inquiry wherein he examined seven books and ruled that "they appeared to be obscene." Subsequently he conducted a full hearing and held that the books were obscene and ordered them destroyed. The Supreme Court of Kansas upheld the lower court's decision, but the Supreme Court of the United States reversed the holding, although its members were unable to agree on an opinion supporting their reversal.

The Supreme Court held that, by failing first to grant a hearing on the question of obscenity, the procedure "operates as a prior restraint on the circulation and dissemination of the books" and in violation of constitutional rights of speech and press.

To the same effect is *Delta Books Distributor* v. *Cronvich* (7-14-69), 304 F. Supp. 662, and additionally—that it was inconsequential that the material was purchased instead of seized.

In the same vein is *Sokolic* v. *Ryan* (9-18-69), 304 F. Supp. 213, where the court pointed out that the seizure and confiscation of materials in advance of an adversary hearing on the issue of obscenity is prohibited by the First Amendment, etc.

Persuasive as these decisions appear, they are not, in our judgment, dispositive of the issues as we see them.

The *Marcus* and *Quantity of Books* cases deal with seizure of volumes of books, including both obscene and not obscene. In our judgment the court was rightly concerned with denial of circulation of books that were not obscene and that the seizure of such books deprived the owner of due process. If it were found that the books were not obscene, the ability to effectuate a sale was gone, per-haps forever. In the instant case, we have films purchased, not seized, and only after the films were exhibited and thereafter held as evidence only to the extent they were viewed.

In *Milky Way Production, Inc.,* v. *Howard R. Leary* (1969, and affirmed 2-27-70), 305 F. Supp. 288, a three-judge court denied injunctive relief claiming violation of the First and Fourteenth Amendments, holding that there need not be an adversary hearing before an arrest for obscenity.

In *United States* v. *Peter Frederich Fragus* (1970), 428 F. 2d 1211, it was held by the United States Court of Appeals, Fifth Circuit, that the arrest of a "panderer of gross smut may be effected under ordinary common processes without a prior judicial determination of obscenity of materials he peddles."

In *United States* v. *Gower* (9-16-70, Dist. of Columbia), 316 F. Supp. 1390, the court said, "Here the two packets of photographs and the film * * * were purchased from the defendants. To require a prior adversary determination of obscenity *vel non* under the present facts would result in the absurdity of requiring the police undercover agents

to have an adversary hearing before even making a purchase of suspected obscene material.''

In distinguishing these facts from *Quantity of Books*, the court went on to say, ''The court in *Books* dealing with a massive seizure of many kinds of books in the public domain required a prior adversary hearing in order to protect against the possible seizure of nonobscene materials. There is little danger of this in the present case where the material was not in the public domain, was handled furtively * * * the public is not prevented from seeing or having available to it any nonobscene material.''

In *Peachtree News Co.* v. *Slaton* (6-25-70), 175 S. E. 2d 539, the Georgia Supreme Court held that prior adversary hearing on the question of obscenity is not necessary where the magazine was purchased.

''There is a vast distinction in requiring an adversary hearing for a determination of obscenity before seizure of books, and requiring such hearing when the books *were not seized but were procured by purchase* from the dealer by the prosecuting attorney and are in his possession. To seize books before they are declared obscene and remove them from sale by the dealer could work irreparable property loss to him, if the court held them not obscene upon a latter hearing. The dealer has lost the sale of his books or magazines, and there may be no sale for them after their return. *Where, as here, the prosecuting officers procured the magazines by purchase, the dealer would suffer no injury, if the books are later held not to be obscene.*'' (Emphasis added.) (p. 540)

The court in *Slaton* distinguished the *Quantity of Books* case by the following reasoning:

''The reason given in the decision in *A Quantity of Copies of Books* v. *Kansas*, for a prior adversary hearing is that, 'if seizure of books precedes an adversary determination of their obscenity, there is danger of abridgement of the right of the public in a free society to unobstructed circulation of non-obscene books.' *This reasoning would not apply in a case like the present one, where there has been no seizure, but only a purchase, and it is the*

*object of the dealer to sell.''* (Emphasis added.) (p. 540)

In *United States* v. *Wild* (C. A. 2nd Cir. 1970), 422 F. 2d 34, Chief Judge Lumbard of the Reviewing Court held that an adversary hearing was not required, as he said:

"In conjunction with the specific claim that the items seized should have been suppressed, appellants present a broader argument that seizures in an obscenity case without a prior adversary hearing on the issue of obscenity are unconstitutional under *Quantity of Books* v. *Kansas* * * *. These cases are inapposite since they involved massive seizures of books under state statutes authorized warrants for the seizure of obscene materials as a first step in civil proceedings, seeking their destruction.'' (p. 38)

Of like effect see *United States* v. *Pryba* (D. C. 1970), 312 F. Supp. 466; *Brazzell* v. *Gibbens* (1969), 306 F. Supp. 1057; *United States* v. *Alexander* (Minn. 1969), 313 F. Supp. 687, although reversed in 428 F. Rep. 2d 1169 (5-22-70), the court, in ordering the return of the materials, held "without prejudice * * * to compel defendant to deliver * * * one copy of the title described in warrant * * * for use in connection with any criminal prosecution.''

Upon review of the authorities, we cast our lot with those who hold that the requirement to conduct adversary hearings on "obscene" films offered for sale before an arrest or prosecution can be effected is unnecessary and that the absence of such a hearing affects neither the validity nor the legality of the arrest or the indictment that followed.

To hold that the seller of the films sought to be suppressed here should be accorded adversary proceedings before arrest and indictment can be accomplished is to scoff at our obscenity laws and the public they were passed to protect. Nor do we believe that the First and Fourteenth Amendments of the Constitution need be construed to forge a ring of protection around such purveyors of pornography. We see no constitutional reason why these "salesmen" should be given the consideration of prior adversary hearings for we find no abridgement of their rights or privileges by such denial. It is our opinion that

the law should not erect another barrier for the police to hurdle in their already difficult responsibility to curb obscenity and that these purveyors should not be given a prior hearing to ascertain whether their product is sufficiently hard-core pornography to warrant prosecution. Therefore, the motion to suppress for lack of prior adversary hearing is overruled.

*Constitutionality*

As his second ground the defendant urges suppression on the basis that R. C. 2905.34 is unconstitutional. To support his position he relies on *Stanley* v. *Georgia* (1969), 394 U. S. 557, 22 L. E. 542, where the U. S. Supreme Court held that possession of "printed or filmed obscene matter" is free from governmental intrusion in that obscenity regulations cannot reach into private homes.

Supplementing this authority, he points to *United States* v. *Thirty-Seven Photographs* (1-27-70), 309 F. Supp. 36. In that case, a person with 37 photographs, while going through customs, was arrested on the ground that the photographs were obscene. The court held the statute invalid which prohibited persons from importing any obscene books on the ground that if one is permitted to possess obscene books for his personal use, it follows that he should be permitted to receive them.

If we understand defendant correctly, he believes that the right to receive and possess includes the right to sell. We cannot stretch the pronouncement of the Supreme Court to embrace defendant's position on this score and we therefore reject it. There is a vast and vital difference between possessing and receiving material on the one hand and selling it on the other. If one enjoys obscene material in his own home, that is his concern, but when he seeks to sell it, it becomes society's concern.

The issue of the constitutionality of R. C. 2905.34 has been before the Ohio Supreme Court on many occasions. See *State* v. *Jacobellis* (1962), 173 Ohio St. 22; *State* v. *Wetzel* (1962), 173 Ohio St. 16; *State* v. *Mazes* (1966), 7 Ohio St. 2d 136. In each of these cases, the constitutionality of R. C. 2905.34 was upheld.

It is our considered opinion, therefore, that the motion to suppress, based on the contention that R. C. 2905.34 is unconstitutional, should likewise be overruled and it is so ordered.

*Motion overruled.*